## McCASKEY v. SCHROCK et ux. (No. 1136.)

(Court of Civil Appeals of Texas. El Paso. Nov. 18, 1920.)

1. **Mines and minerals** ⚙=58—**Oil and gas lease held not void for want of consideration.**

Oil and gas lease, requiring lessee to begin drilling within one year and to prosecute work with reasonable diligence, *held* not void for want of consideration, such promise by lessee being a sufficient consideration for the rights and interest granted by lessors.

2. *Mines and minerals* ⚙=58—*Failure to pay consideration immaterial in view of other consideration.*

Where inducing consideration for oil and gas lease to lessors was the development of the mineral resources of the land in the section where lessors' land is situated and the covenant on the part of lessee to drill well, lessee's failure to pay the $1 named as consideration was immaterial.

**3. Mines and minerals ⬤⟶58—Lease not void for uncertainty as to where well was to be drilled.**

Where oil and gas lease referred to a number of similar leases contemporaneously executed, and required lessee to drill well in area of land covered by all leases, without designating particular land on which well was to be drilled, the uncertainty as to where well might be drilled did not render lease ineffectual, but could be explained by extrinsic evidence to show the meaning the parties placed on it.

Appeal from District Court, Midland County; Chas. Gibbs, Judge.

Action by W. M. Schrock and wife against J. G. McCaskey. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Scott, Brelsford & Smith, of Eastland, and J. M. Caldwell, of Midland, for appellant.

Garrard & Baker, of Midland, for appellees.

HIGGINS, J. On June 25, 1918, appellees, Schrock and wife, signed, acknowledged, and delivered to the appellant the following instrument:

"Agreement made and entered into the 25th day of June, 1918, by and between W. M. Schrock and wife, Mrs. Lillie Schrock, of Midland county, Texas, party of the first part, hereinafter called lessor (whether one or more), and J. G. McCaskey, party of the second part, hereinafter called lessee, witnesseth:

"That the said lessor, for and in consideration of one dollar, cash in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessees to be paid, kept and performed, has granted, demised, leased and let, and, by these presents, does grant, demise, lease and let unto said lessees, for the sole purpose of prospecting, drilling, mining and otherwise operating for oil, gas and other minerals of every kind and description, and laying pipelines and building tanks, power stations and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the county of Midland, state of Texas, described as follows, to wit:

"All of sections 22, 23, 28 and 34, block 37, township four (4), south, T. & P. Ry. Co., containing 2,560 acres, more or less, being * * *

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil, gas or other minerals are produced from the said land by the lessees.

"In consideration of the premises, the said lessees covenant and agree:"

First. (This paragraph provides for a one-eighth royalty to the lessors of all oil produced.)

Second. (This paragraph provides for the payment of $100 per year to the lessors for gas produced from wells producing gas only.)

Third. (This paragraph provides for the payment of $25 annually to the lessors for gas produced from any oil well.)

Fourth. (This paragraph provides for the payment to the lessors of 25 cents per ton for all coal mined and marketed.)

Fifth. "If no well be commenced on said land within two years from the date above written, this lease shall terminate as to both parties, unless the lessees, on or before the expiration of that time, shall pay or tender to the lessor, or to the lessor's credit, in the Midland National Bank of Midland, Texas, or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of ten (10) cents for each acre of land hereby leased, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months; in like manner or upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively, and it is understood and agreed that the consideration herein recited cover not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessees' option of extending that period as aforesaid, and any and all other rights conferred.

Sixth. "Should the first well drilled on the above-described land be a dry hole, then and in that event if a second well is not commenced on said land within twelve months from the expiration of the last rental period, which rental has been paid, this lease shall terminate as to both parties, unless the lessees, on or before the expiration of the said twelve months shall resume the payment of rentals in the same amount and same manner as hereinbefore provided; and it is agreed that upon the resumption of payment of rentals, as above provided, that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue just as though there had been no interruption in the rental payments." Other provisions of this paragraph are unimportant.

Seventh. (The provisions of this paragraph are unimportant in so far as concerns this appeal.)

Eighth. "It is especially understood and agreed by and between the parties to this contract that the primary object hereof is to aggregate a large body of land in the same vicinity of sufficient acreage to permit development and prospecting for the production of oil, gas and other minerals; and it is further understood and agreed that this contract is one of a number of similar contracts executed by the several owners of land in said vicinity with said lessees, and that the consideration moving to each lessor is the general development of the section embraced within the scope of these leases, and the benefit which each lessor will derive from the exploration and prospecting of said land in said vicinity for oil, gas and other minerals.

"And as a further and additional consideration moving to each of the several lessors (including the lessor in this contract) is the agreement and contract on the part of said lessees within one year to begin drilling and to prose-

cute with all reasonable diligence a well within the area of the block of land hereinbefore mentioned, testing the said block of land for oil gas and other minerals.

"And it is further especially understood and agreed that a failure on the part of the lessees to commence said well within said time above stated shall operate as a forfeiture of this lease contract and all rights thereunder; and the lessees bind and obligate themselves, at their own expense, to execute and deliver to the several lessors good and sufficient releases and acquittances to said land in the event of said forfeiture."

This suit was brought by Schrock and wife against McCaskey, J. M. Jemison, W. J. Moran, and Charles L. Sinclair, to cancel and annul the foregoing lease contract upon the ground that it was unilateral. Jemison, Moran, and Sinclair filed disclaimers. The case was submitted to a jury upon special issues as follows:

"First. Was the consideration of $1.00 stated in the lease contract ever paid?

"Second. Will the production of oil in paying quantities at what is known as the Bryant well materially enhance the value of the mineral rights in plaintiffs' lands?"

The first question was answered in the negative and the second in the affirmative. Judgment was rendered in favor of Schrock and wife. The judgment recites that the court was of the opinion that the contract was unilateral and void for want of mutuality and consideration, and upon that theory rendered judgment in favor of Schrock and wife.

The plaintiff Schrock testified that—

His negotiations were with the defendant Moran, and that he desired McCaskey and his associates to develop that section where his land was situated for oil. "Yes, I desired them to develop this section of the country. I wanted them to dig a well. My idea was that, in any event, a well should be commenced within one year from the time I signed my contract with them, and the idea of getting a well dug was really the motive and purpose that actuated me in my dealings; it was to get down an oil well. I still own other lands not covered by my lease to Mr. McCaskey, and the development of the land that I have leased and the discovery of oil on those lands, or in that vicinity, would greatly enhance the value of my remaining, or unleased, lands; that is, I think it would."

It appears from the evidence that McCaskey and his associates, on or about June 25, 1918, entered into contracts of a similar nature to the one here considered with various 'landowners in that section, and that the leases covered a large amount of land; that the plaintiff Schrock in executing and delivering the lease contract in question, contracted with reference to that condition of affairs, knowing that McCaskey and his associates expected to obtain leases on a large amount of land in that section and explore for oil and gas.

It was agreed by the parties, as shown by the statement of facts, that the acreage covered by the McCaskey leases aggregated about 136,000 acres; that in the early part of June, 1919, the defendant assembled supplies and tools, and erected a derrick on land whereon is situate what is referred to as the "Bryant Well," and actually begun the drilling of a well there on June 20, 1919; this well is situate 16 or 17 miles from the lands covered by the plaintiffs' lease; that this well, at the date of trial (February 12, 1920), was down 1,625 feet, and the total cost to that date was approximately $90,-000, $50,000 of which had been expended in actual drilling and $40,000 for tools and casings which could be salvaged; that the work of drilling the 'Bryant well at the date of the trial was still being prosecuted; that the plaintiff's suit was filed June 5, 1919; and further agreed that the lands shown on a map introduced in evidence were all leased to McCaskey at about the same time the Schrock land was leased; "that they were a contemporaneous transaction;" that the lease on the Bryant land was also executed on June 25, 1918, and it was further agreed that all of the McCaskey leases were identical except as to the parties and descriptions.

[1] As heretofore indicated the judgment of the trial court was based upon the theory that the lease contract was unilateral, unsupported by an independent consideration, and therefore terminable at the will of the lessors. This is the theory upon which the appellees seek to uphold the judgment. We cannot agree with the view that the contract in question was unsupported by any consideration moving from the lessee to the lessors, and that it was wholly optional with the lessees whether they ever did anything under the contract.

The eighth paragraph of the contract imposes upon the lessees a legal obligation within one year to begin drilling and to prosecute with all reasonable diligence a well within the area of the block of land mentioned, testing the said block of land for oil, gas, and other minerals. The quoted portion of that paragraph evidenced a covenant on the part of the lessees to drill and test the land for oil, gas, and other minerals. A promise to do a certain thing is a sufficient consideration for the rights and interest granted by the lessors in the instrument. Full protection may be accorded the lessor with respect to the enforcement of the lessees' covenant in this case. Grubb v. McAfee (Sup.) 212 S. W. 467. Upon this view of the case it follows that the rights granted by the lessors are supported by a sufficient consideration, and the contract is not to be regarded as unilateral.

In view of a retrial it is deemed advisable to indicate the views of this court upon other phases of the case.

[2, 3] As to the question of whether or not

the $1 consideration recited in the contract was actually paid to the lessors, this is regarded as unimportant. The eighth paragraph of the contract discloses that the inducing consideration to the lessors was the development of the mineral resources of the land in the section where the plaintiffs' land is situated and the covenant on the part of the lessees to drill a well testing said land for oil, etc. Not only does the contract disclose this fact, but the testimony of the plaintiff Schrock is also to that effect. It is thus immaterial whether the $1 was in fact paid to the lessors. The material issue in this case is whether or not the drilling of the well upon the Bryant lease, 16 or 17 miles from the plaintiffs' land, is a sufficient compliance with the lessees' covenant to drill a well. The eighth paragraph recites that the primary object was to aggregate a large body of land in the same vicinity of sufficient acreage to permit development and prospecting for the production of oil, gas, etc., and it was understood that the Schrock contract was one of a number of similar contracts executed by landowners in said vicinity, and that the moving consideration to each lessor was the general development of the section embraced within the scope of those leases and the benefit which each lessor would derive from the exploration and prospecting of said land in said vicinity for oil, gas, and other minerals. After having thus recited the object of the lease and the contemplation of the parties, the lessees then covenant to drill a well within the area of land mentioned. The contract is uncertain in identifying the particular lands which the parties had in mind upon which the well might be drilled. This uncertainty, however, is not regarded as sufficient to render the contract wholly ineffectual, but that it may be aided by extrinsic evidence to show the meaning which the parties placed upon it.

"The law will not pronounce a contract incurably uncertain, and therefore null, until it has cast upon it all the light to be gathered, either from a collation of all the words used, or from all contemporaneous facts which extrinsic testimony establishes. If these make the intention and meaning of the parties certain, it may still be an intention which the words cannot be made to express by any fair rendering. In this case also the contract is null, for it is the words, and not the intention without the words, that must prevail. But if, when the intention is thus ascertained, it is found that the words will fairly bear a construction which makes them express this intention, then the words will be so construed, and the contract, in this sense or with this interpretation, will be enforced, as the contract which the parties have made." 2 Parsons on Contracts (6th Ed.) page 561.

See, also, Smith v. Ry. Co., 101 Tex. 409, 108 S. W. 819; Lynch v. Ortlieb, 70 Tex. 727, 8 S. W. 515; Railway Co. v. Jones, 63 Tex. 524; 1 Greenleaf on Evidence, §§ 282, 288.

Upon retrial, if it should be found from a consideration of the language of the parties used at the time the contract was executed, and all the surrounding facts and circumstances, that the land upon which the Bryant well is situated is within the body of land contemplated by the parties to the present lease and referred to therein, then the uncertainty of the contract in the particular indicated is removed, and the drilling of the well upon the Bryant land will comply with the covenant of the lessees.

The second issue submitted by the court is not regarded as controlling. The material question is whether or not the drilling of the Bryant well complies with the covenant of the lessees, and this cannot be determined until the uncertainty heretofore pointed out has been made certain by resort to extraneous evidence.

There is no conflict between the fifth and eighth paragraphs as to the time within which the well is to be drilled. The fifth paragraph relates to the time within which a well must be drilled on the Schrock lands, or in default of such drilling certain payments must be made by the lessees. The eighth paragraph relates to the time within which a well must be drilled on any of various leased lands referred to in that paragraph.

Reversed and remanded.