**SUNSHINE OIL CORPORATION et al. v. DOOLEY et al. (No. 1263.)**

(Court of Civil Appeals of Texas. El Paso. Feb. 16, 1922.)

1. **Dismissal and nonsuit** ⊂═⊃24—**Plaintiff may discontinue as to parties not served, particularly if unnecessary.**

Since the statute permits plaintiff to discontinue as to defendants not served and proceed against those that are, it was not ground for abating the action that plaintiff dismissed as to some defendants not served, where there was no allegation showing that such defendants were necessary parties or had an interest in the subject-matter which would make them necessary parties.

2. **Mines and minerals** ⊂═⊃78(7)—**Petition in suit to cancel, forfeit, and rescind lease held not subject to general demurrer.**

In an action to cancel, forfeit, and rescind an oil lease contract and remove cloud from title, and in the alternative to have a lease contract declared void, *held* that the petition was not subject to a general demurrer, in that it did not state that plaintiffs owned the lands within the lease, and did not tender shares of the capital stock of a defendant oil corporation, an assignee of the original lessees.

3. **Mines and minerals** ⊂═⊃78(7)—**Exception to petition to cancel lease alleging meaning of term used therein held properly overruled.**

Where a lease recited that it was one of several from different parties to lessees covering "land in the same general locality," and obligated lessees to begin a well in "said locality" within a year, and prosecute it to completion with due diligence, and did not otherwise define or state what was meant by the term "lands in the same general locality," an exception to a petition to cancel it, alleging that the term "general locality" meant a well near enough to plaintiff's lands to prove their mineral qualities, and that it was so understood by both parties, made on the ground that it sought to ingraft on the contract conditions, terms, and meanings contrary to the plain import, and not contained in the instrument itself, nor warranted by its reading, and contradicting its terms and meaning, was properly overruled.

4. **Evidence** ⊂═⊃158(28)—**Bank cashier's testimony held not subject to objection that books were best evidence.**

In an action to cancel an oil lease contract, testimony of the cashier of the bank to which the contracts provided rentals could be paid in lieu of the digging of an oil well that, according to the bank's records and books, the rentals were not deposited in the bank to the credit of either of the plaintiffs, *held* not subject to the objection that the books were the best evidence.

5. **Mines and minerals** ⊂═⊃78(7)—**In an action to cancel lease, testimony of witness as to what was done in drilling a test well held not objectionable because he was a stranger to lease contract.**

In an action to cancel a lease requiring the drilling of a well in the same general locality as the leased premises within a year, testimony of a witness as to what was done in putting down a test well *held* not objectionable on the ground that he was not a party to the lease and held no conversation with reference to the same prior to its execution, or was not a party to the suit, or had no land leased to the defendants, and being a stranger to the contract; he having stated in answer to a question as to whether when the lease was executed anything was said by defendants as to where they were going to drill that he never heard anything about any exact locality.

6. **Mines and minerals** ⊂═⊃78(7)—**In an action to cancel a lease involving location of well in "general locality," admission of testimony of a witness as to what defendants meant by term held not error.**

In an action to cancel an oil lease involving the question of the interpretation of a provision requiring the beginning of a well within a year on "land in the same general locality" as the leased premises, there was error in permitting a witness to state that he knew from the statement of defendants what they meant by the term "general locality," or where they intended to place the well, and permitting him to state such location; the record showing that he was not permitted to state what the parties meant, but that he was permitted to state that he went with a defendant and a geologist to show them the lines of a certain section and other lands, and, that after looking them over, such defendant said they were going to put the well on such section, and that he was with them when they made the location.

7. **Mines and minerals** ⊂═⊃78(7)—**Burden placed on plaintiffs suing to cancel lease to show alleged meaning of term as to location of well and failure to drill within time agreed on.**

In an action to cancel an oil lease, providing for the drilling of a well in the "general locality" of the leased premises, within one year, *held* that the burden was on plaintiffs to show the meaning of the term "general locality" to be as alleged, and that no well was commenced as the agreement was alleged to be and within the time agreed upon, and, if commenced, was not prosecuted with diligence.

8. **Appeal and error** ⊂═⊃931(4)—**In absence of evidence, it cannot be presumed that the court found a term used in lease to mean as alleged by plaintiff.**

In landlord's action to cancel oil lease contract for lessees' failure to sink a well within one year on "lands in the same general locality" in the absence of any evidence as to the meaning of the quoted term, it cannot be presumed on appeal that the court found the meaning to be as alleged by plaintiff.

9. **Mines and minerals** ⊂═⊃78(7) — **Evidence held insufficient to warrant canceling oil lease.**

Evidence *held* insufficient to justify a decree rescinding and canceling the contract for an oil lease.

Appeal from District Court, Ward County; Chas. Gibbs, Judge.

Suit by A. G. Dooley and others against the Sunshine Oil Corporation and others.

Verdict and judgment for plaintiff for possession of the land in controversy and for cancellation of a lease, and the Sunshine Oil Corporation and certain other defendants appeal. Reversed and remanded.

Jno. B. Howard, of Pecos, for appellants.

Ben Palmer and H. G. Russell, both of Pecos, and Birge ·Holt, of Barstow, for appellees.

WALTHALL, J. A.·G. Dooley and W. P. Kerr, appellees, brought this suit to the May term, 1920, of the court, against appellants the Sunshine Oil Corporation, Alfred Tinally, John B. Howard, and a number of others not necessary to name, to have canceled, forfeited, and rescinded an oil lease contract on certain lands in Ward .county, Tex., described, and to remove cloud from title, and in the alternative to have said lease contract declared void. Appellees alleged that Howard and Tinally had assigned the lease to the Sunshine Oil Corporation, and failure on the part of the appellants to begin the drilling of an oil well within the time provided in the lease on appellees' land, or on the lands within the general locality of their lands, and failure to pay the rental stipulated for in the contract, and failure to prosecute the drilling of any well with due diligence. They further state what was meant in the lease contract by the term "lands in the same general locality." All defendants other than those named were dismissed from the suit. At the May term of the court, 1920, E. F. Ducommon and Lula G. Ducommon filed a petition and bond for removal of the case to the federal court on the ground that the matters and amount in dispute in the cause exceed the sum of $3,000; that the suit is of a civil nature, and that the controversy is wholly between citizens of different states; and that the matters in controversy in said suit and between plaintiffs and defendants can be determined as between them in one and the same suit. They further allege that after the execution and delivery of the lease contract by Dooley and Kerr and before the filing of the suit, they purchased and now own and hold by assignment to them large and valuable interests in said lease contract sought to be canceled, and in the oil and minerals thereby conveyed, and that a cancellation of said lease contract as to .Tinally, Howard, and the Sunshine Oil Corporation would extinguish and render their interests null and void. While the petition for removal appears to have been sworn .to, neither the petition nor the affidavit to the petition is signed by either of the petitioners. While the record shows that the bond for removal was filed by the clerk, it does not show an approval of the bond, or a refusal to approve same, by the District Judge, nor does the record show an order for removal or refusal to make the order, or any action by the court on the petition or

bond for removal. The record does not show that the above parties further answered in the case.

Defendants Howard, Tinally, and the Sunshine Oil Corporation, appellants in this appeal, filed a plea in abatement, alleging that after the execution and delivery of the lease contract by Dooley and Kerr to Tinally and Howard said Tinally and Howard duly assigned and conveyed same with the mineral rights therein contained to the Sunshine Oil Corporation, and that the parties originally joined in the suit as defendants, but not served with citation, but dismissed, own interests in said lease contract and the minerals in said lands therein described, and are necessary parties; appellants further answer in their plea that by reason of the filing of the above petition and bond for removal the district court is without jurisdiction.

Appellants further answer by general demurrer, special exceptions, want of necessary parties defendant, general denial; they plead in defense special stipulations in the lease contract; full compliance on their part with the provisions of the lease; that by reason of matters pleaded appellees are estopped from seeking to cancel the lease contract.

The material portions of the lease contract sought to be canceled are as. follows,:

"The State of Texas, County of Reeves.

"Know all men by these presents: That this indenture entered into by and between A. G. Dooley of Stoutsville, Mo., and W. P. Kerr of Ashley, Mo., acting by and through their agent and attorney in fact, N. P. Rodgers, party of the first part, hereinafter referred to as the lessor, and Jno. B. Howard and Alfred Tinally, of Reeves county, Texas, parties of the second part, hereinafter referred to as the lessees, witnesseth:

"That the lessor, for and in consideration of the sum of one dollar ($1.00) in hand paid by the lessees, the receipt of which is hereby acknowledged, of the promises of the lessees, hereinafter contained, and of the royalties to be paid, and covenants to be kept hereunder, has granted, bargained, sold and conveyed, and does by these presents grant, bargain, sell and convey unto the lessees, all the oil, gas, coal and other minerals of every kind and description, in and under the hereinafter described land, together with the exclusive right of ingress and egress at all times for the purposes of prospecting, drilling, mining and otherwise operating the same, and to erect, maintain and remove all structures and appliances in connection therewith, including the right to pull the pipe from the wells, and to lay, maintain and remove all pipes and other means of transportation, reserving, however, the royalties and payments hereinafter stipulated. Said land situated in Ward county, Texas, and more particularly described as follows, to wit: [The lands are here sufficiently described by sections and block, and aggregate 7,040· acres.]

"To have and to hold, unto the lessees, their heirs, executors, administrators, successors and assigns forever, upon the following terms: 1. If oil is found [provision is made as to same]. 2. If coal is found [provision is made

as to same]. 3. [Free use of oil, gas, and water for development and operation is provided.] 4. If operations for the drilling of an oil or gas well be not begun on the land above described within one year from the final execution and delivery hereof, this conveyance shall be forfeited as to both parties, unless the lessees, or their successors or assigns, shall pay to the lessor on or before the anniversaries of this lease, according to the date written below, ten (10) cents per acre for the period operations are delayed, but such vitality cannot be maintained by such payments for a greater delay than three years, without the written consent of the lessor. Payments as above provided for shall be deemed complete when made or tendered by a deposit of the amount to the credit of the lessor in the Pecos Valley State Bank of Pecos, Texas. 5. This instrument is one of several from different parties to the lessees, covering land in the same general locality. It is understood and agreed that if the lessees, or their successors or assignees, shall begin a well in said locality within one year from the date hereof, and having begun such well shall prosecute the same (or an additional one in lieu of the first, in event of an accident to the first) to completion with due diligence, then the time so employed shall not be computed as any part of the time for the beginning of operations as described in paragraph 4 above; and no rentals shall accrue until the expiration of one year from the completion of the neighboring well. 6. If the lessees, or their successors or assigns, shall sink a well or shaft and discover either oil, gas or any other mineral or minerals, on the above-described land * * * [the paragraph in that event provides for the extended term of the lease]. 7. [Provides against tearing down fences, etc.] 8. This instrument is not intended as a mere franchise but as a conveyance to the extent stated, and is so understood by both parties. * * * [The ninth paragraph obligates the lessor to perfect the title to the land, etc.] 10. The estate hereby granted and the privileges hereby conferred may be assigned by the lessees, or successively assigned, and all covenants hereof shall extend to the assigns and successive assigns, their heirs, successors and legal representatives. 11. The lessees agree: (a) To cause a geological survey of the said locality, including the land above described, for oil and gas production; (b) to cause to be organized a corporation with an authorized capital stock of 300,000 shares of the par value of $1.00 each and to transfer thereto this and other leases covering approximately 50,000 acres; (c) to transfer to the lessor one share of full paid and nonassessable stock in said company for each ten cents of land leased; (d) to use their best efforts to sell sufficient of said capital stock to thoroughly test said locality for oil and gas; (e) and to procure by said company the ratification and assumption of this lease and agreement."

The lease contract was executed and acknowledged on the 13th day of July, 1918, and filed for record on August 24, 1918. The case was tried with a jury, and submitted upon special issues. The jury found:

First. It was intended by the parties to the contract in question that the Victory well was,

or is, situated within the "general locality" of the lands in question. Second. The work of drilling the Victory well, on section 126, had not been prosecuted with due diligence since same was begun.

On the verdict of the jury the court rendered judgment for appellees for possession of the lands in controversy, and for a cancellation of the lease. The Sunshine Oil Corporation, Tinally, and Howard prosecute this appeal.

[1] Appellants present 17 propositions as grounds for reversal of the judgment. The first proposition asserts error in the overruling of their plea in abatement. In this we think there was no error. The statute provides that the plaintiff may discontinue as to those not served and proceed against those that are. There is no allegation in the amended petition, upon which the trial was had, which affirmatively alleges any fact or shows that any one of the defendants dismissed from the suit was a necessary party, or had interests in the subject-matter of the suit which would make them necessary parties. States v. Goodnight, 70 Tex. 682, 11 S. W. 119; Siddall v. Hudson (Tex. Civ. App.) 206 S. W. 381.

[2] The appellees allege that they entered into the lease contract pleaded with Tinally and Howard, and appellants claim the rights they assert in their answer by reason of and under said contract. We think the petition was not subject to the general demurrer, in that it did not state that plaintiffs owned the lands within the lease, and did not tender the shares of the capital stock of the Sunshine Oil Corporation.

[3] The lease contract by its fifth paragraph states that it is one of several from different parties to the lessees covering "land in the same general locality" and obligates appellants to begin a well in "said locality" within a year, and prosecute same to completion with due diligence. The contract does not otherwise define or state what is meant by the term "lands in the same general locality." The petition alleged that by the term "general locality" was meant a well near enough to plaintiffs' lands to prove their mineral qualities, and that it was so understood by both parties. Appellants specially excepted to the portion of the petition defining "general locality" on the ground that it seeks to ingraft upon the contract conditions terms and meanings contrary to the plain import of the contract, and not contained in the instrument itself, nor warranted by its reading, and is contradictory to its terms and meaning. The court overruled the exception.

The rule of the court presents no error. In Sunshine Oil Corporation v. Randals (Tex. Civ. App.) 226 S. W. 1090, this court, in discussing this same form of contract, held that where the contract did not define what was meant by the expression "land in the same

general locality," thus indicating the land or territory embraced in the expression used, the expression "lands in the same general locality" would be uncertain in meaning, and that it would be a matter of proof as to what land was meant to be in the general locality. To the same effect is the holding in McCasky v. Schrock (Tex. Civ. App.) 225 S. W. 418, in which this court held that the expression "land in the same vicinity" was uncertain in identifying the particular lands which the parties had in mind upon which the well might be drilled, and might be aided by extrinsic evidence to show its meaning as the parties understood it. In order to introduce proof as to the meaning of the expression plaintiffs have alleged what was meant by the term "lands in the same general locality." The petition is sufficient we think to tender the issue as to the meaning of the expression. Appellants joined issue on the meaning of the expression "lands in the same general locality," and alleged that each and all of the several surveys leased to appellants to enable appellant Sunshine Oil Corporation to explore and test for gas and oil were, within the contemplation of the parties, "lands in the same general locality," and on the evidence heard the issue was submitted as to the Victory well.

[4] The petition, in alleging what the parties to the contract meant by the expression "lands in the same general locality" was not contradictory of the provisions of the contract as claimed in the fourth and fifth propositions. The sixth proposition is without merit. The seventh complains that the witness Browning, cashier of the bank named in the contract in which the rentals, in lieu of the digging of the oil well, could be paid, was permitted to state by deposition that, according to the records and books of the bank, the rentals were not deposited in the bank to the credit of either of plaintiffs. The evidence was not subject to the objection that the books of the bank were the best evidence.

[5] Otis Rogers testified to what was being done by appellants in putting down the Victory well as a test well. He said he was there every few days, made inquiries, and looked around to see what was being done; when it first started it was started in a very business-like way; at other times there was nothing being done practically; did not know how long it was before they began to stop operations, it was a short time; did not remember the number of days; it was in the neighborhood of two weeks; after that he saw them doing work; saw them drill there six or eight months later; between these times he did not see them do any drilling; was there every two or three days, was passing there most of the time; as to whether there was any other "Sunshine" well in the vicinity of the Victory well, or anywhere near it, there was a water well near it.

The evidence was not objectionable on the ground that Rogers was not a party to the lease, and held no conversation in reference to same prior to the execution of the lease, or was not a party to the suit, or had no land leased to appellants and being a stranger to the contract. Rogers was asked to state whether or not when the lease was executed anything was said by any of defendants, officers, or agents as to where they were going to drill, under that lease or near it, but said he never heard anything about any exact locality; heard something in reference to the proposed locality of the well to be drilled under the lease, but we find in the record no detailed statement, and the brief points out none.

[6] Proposition 10 asserts error in permitting the witness Pat Wilson to state, over objection, that he knew from the statement of the defendants what they meant by the term "general locality," or where they intended to place a well. The record shows that the witness was not permitted to state what the parties meant by the term "general locality." Witness was permitted to state that he went with defendant Tinally and the geologist, and showed them the lines of section 126 and some other lands, and, after looking them over, Tinally said:

"To come as near to getting that well in the center of the Ward county leases as possible, that they were going to put it on section 126."

Witness was with them when they made the location. Appellants allege they located the Victory well on section 126, H. & T. C. Ry. Co. survey, block 34, Ward county. We cannot see on what ground the evidence is objectionable. The jury found that the Victory well was on lands in the same general locality and within the terms of the contract.

[7] The eleventh and twelfth propositions present the main and most difficult issue in the case. It is insisted that the court should have instructed a verdict for appellants. The evidence is clear that, the Victory well being found by the jury to be on lands in the same general locality as appellees' lands, they also found that appellants had not used the diligence contracted for to put it down. In fact, the evidence shows that well to have been practically abandoned as a test well. By the terms of the lease contract appellants agreed to begin the drilling of a well on appellees' lands or on lands in the same general locality of appellees' lands within one year from the time of entering into the contract, and to prosecute the digging of such well with due diligence, or to pay a stated rental. The rental was not paid. Appellees base their suit to cancel the lease contract on the ground that appellants have not complied with the contract to commence such well and prosecute the work with diligence.

Appellees further allege that by the term "general locality" as used in the contract,

and within which a test well was to be put down, was meant a well near enough to appellees' lands to prove the mineral qualities of such lands, and it was to secure such proof that constituted the only moving consideration to plaintiffs in accepting said neighboring well in lieu of said operations upon their own land. And same was so understood by both parties, and that mineral formations are so varied in their nature that a well 2 miles or over from appellees' lands would not have any bearing upon lands two miles therefrom. The trial court refused to sustain exceptions to that issue as to the above alleged meaning of the contract. Appellants' general denial joined issue on the alleged meaning of the term used, "lands in the same general locality," as appellees' lands. Accepting for the purpose of this appeal that the meaning of the term as used in the contract, "lands in the same general locality" is as stated by appellees, the question is presented: Does the evidence disclose the meaning of the contract to be as alleged? And does the evidence show that to test the mineral qualities of appellees' lands a well should be put down within 2 miles of said lands, or that a test well beyond that distance would not test the mineral qualities of the lands? An examination of the record discloses that no evidence was offered to show that the meaning of the above-quoted term, "lands in the same general locality" was the meaning the parties meant by the use of the term used, nor is any evidence found in the record to the effect or meaning that a well over 2 miles distant from appellees' lands was not within the contemplation of the parties in the use of the term, nor is it shown that a well over 2 miles away would not test the mineral qualities of appellees' lands. The burden was on appellees to show the meaning of the term to be as alleged, and that no well was commenced; as the agreement was alleged to be, and within the time agreed upon, and, if commenced, was not prosecuted with diligence.

[8] The court submitted no issue to the jury as to the meaning of the term "lands in the same general locality," and in the absence of any evidence as to its meaning we cannot presume that the court found the meaning as alleged. The only two issues submitted had reference to the Victory well. The jury found that the Victory well was situated within the general locality of the lands in question, a distance shown to be about 7 miles from the appellees' lands. We

take the finding of the jury to mean that a test well 7 miles distant from the lands in question would test their mineral qualities. The evidence shows that no well was put down nearer the appellees' lands than the Victory well, but the evidence does not show that no other well was put down within such distance to appellees' lands as would test their mineral qualities.

One of appellants' contentions is that the uncontradicted evidence shows that the Laura well was within 20 miles of plaintiffs' lands and was being drilled by the Sunshine Oil Corporation on one of "community leases" and commenced within a year from the date of plaintiffs' lease, and was being prosecuted with due diligence, and was within the same general locality of the plaintiffs' lands, and that for reasons stated the court was in error in refusing to give their requested charge instructing the jury in their favor. The evidence does not show the above facts. It does show that the Laura well is about 20 miles distant from plaintiffs' lands, but it does not show that the Sunshine Oil Corporation was drilling that well, nor the lands on which it is located, nor when commenced, nor whether the drilling has been prosecuted with diligence; nor is there any evidence as to whether it is on lands in the general locality of plaintiffs' lands. In fact, the record is silent as to what the parties to the contract meant by the terms used, "lands in the same general locality." If it meant to embrace all of the lands leased by Howard and Tinally at the execution of the leases, and that a well put down on any of such lands would conform to the contract, the evidence should disclose such facts. Otherwise, we still think the contract is uncertain in its meaning as to the locality on which a well or wells could be put down and comply with its terms.

In order that there may be no mistake as to our holding in case of a retrial, the issues raised by the pleadings are: Did the Sunshine Oil Company begin a well within the "general locality" of the lands incorporated in this lease contract, as the term "general locality" was understood and intended by the parties thereto, at the time the lease was executed, and within the time prescribed therein? If so, was such well, if any, prosecuted to completion "with due diligence?"

[9] We think, as pointed out, the evidence is insufficient to justify the decree rescinding and canceling the contract, and for that reason the case is reversed and remanded.