## Apple et ux. v. McCullough et ux.

(Decided May 1, 1931.)

DYSARD & TINSLEY and VINSON & MILLER for appellants.

W. D. O'NEAL for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Affirming.

The legal question involved in this case is the proper construction and application of section 472 of our present Kentucky Statutes, saying: "The consideration of

any writing, with or without seal, may be impeached or denied by pleading verified by oath." It is in a measure at least, but declaratory of the common-law rule, as is illustrated by the text in 22 C. J. 1157, sec. 1555, saying: "As a general rule, the recitals of a written instrument as to the consideration are not conclusive, and it is always competent to inquire into the consideration and show by parol or other extrinsic evidence what the real consideration was. Thus it may be shown that the real consideration was in fact greater than that which is expressed in the instrument, or that there was some other consideration in addition to that set forth, especially where the consideration set forth is only nominal, even though the additional consideration rested upon the happening of a contingency." To the same effect is the text in 10 R. C. L. 1042, sec. 236, and which common-law rule is in accord with all text-writers and adjudications dealing with the subject of varying written contracts by contemporaneous parol testimony. The general rule is that it is not competent to do so; but an exception exists with reference to the consideration, and which exception is embodied in the section of our statutes supra. Having stated the involved legal principle, we will now state the facts as disclosed by the record, and then determine the propriety of the judgment appealed from.

In the spring of 1926, appellants and defendants below, W. L. Apple and wife, and appellees and plaintiffs below, George McCullough and wife, formed a partnership and embarked in business at Ashland, Ky., which they conducted in the firm name of "Suzanne Soda Shoppe," and which consisted in serving light lunches, cold soft drinks, ice cream, etc. They had no money to begin with, but they jointly executed a note to a bank for $800 and purchased a soda fountain, and other necessary equipment for conducting the business, on the installment plan, and opened the establishment in the firm name. The two husbands were engaged in other business, but evenings and other times when they were away from their work they usually spent in assisting in conducting their partnership business, and Mrs. McCullough was a valiant soldier throughout business hours in looking after and assisting in carrying forward the partnership affairs. Mrs. Apple contributed her services to the extent of her physical ability, though at times she was ill and unable to do so. The best of feeling and close co-operation prevailed, and, while the patronage of the

partnership was considerably in excess of original calculations for prophesied success, the overhead expense and accumulating interest on the investment was likewise greater than had been anticipated, and no surplus profit was realized, but the two couples forming the partnership largely lived from supplies obtained from the stock.

Some time prior to August 6 of the same year Mr. Apple suggested to his other associates the fact that they were realizing no profit and that he thought one couple ought to buy out the other and for one family to own and operate the concern. Discussions of that proposition finally resulted in defendants agreeing to buy out the interest of plaintiffs in consideration of defendants assuming all outstanding indebtedness of the partnership and releasing plaintiffs therefrom, and paying to the latter, twelve months thereafter, the sum of $500. Mr. Apple procured an attorney to prepare a written contract to that effect and which in its entirety says:

"This agreement, made this 6th day of August, 1926, by and between George McCullough and Mary E. McCullough, parties of the first part, and W. L. Apple and Susie A. Apple, parties of the second part, Witnesseth, That the parties of the first part have this day sold to the parties of the second part, all their interest, of every kind and character, in the business conducted under the name Suzanne Soda Shoppe, at No. 2121 Winchester Avenue, Ashland, Boyd County, Kentucky; the parties of the second part to have all the assets of the concern, collect all debts due the concern; and from and after this date, to conduct the business; the parties of the first part to have no interest in any sums due the concern and no obligations as to any debts now owed by the firm, from and after this date. For their interest therein, the parties of the second part agree to pay them the sum of Five Hundred Dollars, on August 6, 1927. In testimony of all which the parties hereto have hereunto set their hands, this 6th day of August, 1926."

That contract was not subscribed by either of the parties to it at that time, but defendants immediately took charge of the business and plaintiffs ceased to participate in its operation, except on one or perhaps two occasions when Mrs. McCullough, upon being requested, gave her assistance for a short while when neither Mr. Apple

nor his wife were able to do so. There is some little conflict as to why the contract was not signed at that time, but it is really immaterial. Plaintiffs testified that the reason was that they demanded a release from the partnership debts by the defendants before signing the contract, which they say the latter agreed to; that some time in February, 1927, it was manifested to them that such releases had been obtained and a meeting was had to complete the contract by all parties subscribing it; that Mr. Apple then stated that he had found the indebtedness of the firm larger than he had thought (although he was the bookkeeper from the beginning), and that he did not believe he would be able to pay the $500 at the time stipulated when the transfer was made (and as embodied in the prepared writing), and he asked that the time for the payment of that sum be extended so as to permit him to make payment after he had discharged the indebtedness, or when he sold the business, if he did do so, and which he was then endeavoring to do; that this request was then agreed to, and by mutual consent an ink line was drawn through this clause of the originally prepared contract, "For their interest therein, the parties of the second part agree to pay them the sum of Five Hundred Dollars on August 6, 1927," but the date of the contract was left as of the time it was drawn, i. e., August 6, 1926, and as thus altered it was then executed. That version, we think, is clearly established by the testimony in the case.

Matters ran along with defendants as sole proprietors and operators of the business until they sold it to another, when plaintiffs demanded payment of the $500, and they were met with the contention of defendants that when the contract was signed in February, 1927 (and at which time the line was drawn through the clause therein as above indicated), it was agreed that defendants should be entirely released from the payment of the $500 and because of which they did not owe plaintiffs that sum or any part of it; whereupon plaintiffs filed this equity action in the Boyd circuit court against defendants, averring in their original petition that the contract as signed, through oversight and mistake, did not truly represent the agreement, and they asked for its reformation so as to show that under its reformed terms the $500 sued for was then due, and for a judgment against defendants for that amount. Defendants denied the material averments

of the petiton and an amended petition sought a recovery under the exception to the general rule above referred to, and embodied in the section of the statute supra, upholding the right to vary or add to the expressed consideration of a written contract by parol proof. Following pleadings made the issues, and the cause was transferred to the ordinary docket, after the filing of the amended petition, and a trial was had before a jury resulting in a verdict for plaintiffs for the full amount of their claim, and, defendants' motion for a new trial having been overruled, they prosecute this appeal.

There is some apparent confusion in the opinions of courts, including those of this one, in the application of the common-law exceptions to the general rule, supra, and our statutory adoption of it, growing out of the failure to properly distinguish, circumscribe, and limit the character of ''consideration'' that may be altered or varied by contemporaneous parol and extrinsic testimony under such permissible practice. In a broad sense everything that each party to a contract agrees to part with is a consideration for the contract. If A sells to B a horse for $200, the consideration that A gets is B's $200, and the consideration that B gets for his $200 is A's horse. So that, if the permissible practice under consideration should be applied without circumscribing limitations, it would be competent in the illustrated case for B to prove by extrinsic parol testimony that, instead of the express consideration of a horse that he was obtaining for his $200, it was an automobile or some other article of property, and, manifestly, if the permission should be construed as broad enough to permit such proof, it would result in the absolute destruction of the general rule that parol extrinsic testimony is incompetent to alter, change, or affect the terms of a written contract, and would place the solemn and duly executed written evidence of contracts at the mercy of parol testimony, and which, clearly, is not permissoble. We are, therefore, confronted with the question as to what is the nature or character of consideration that the common-law rule, and our statutes supra, refer to when they say that ''the consideration of a contract may be altered or impeached by extrinsic parol testimony?''

We are not concerned here with the various exceptions, or apparent exceptions, to the general rule, but are concerned only with two of them; and which are, the one

relating to the consideration for the contract, and the one relating to the time for its performance. It may at once be said that all text authorities and adjudged cases agree that it is competent to vary the date of, or time for performance of, a contract, by contemporaneous parol extrinsic testimony. So that, it will be unnecessary to incumber the opinion with a discussion of that exception. The confusion above alluded to resulted largely, if not solely, from the failure of some courts, or some judges, to distinguish between the "subject-matter" of a contract and its "consideration." Under the exception to the general rule above discussed the latter, i. e., the consideration for a contract, may be varied by the character of proof now being discussed, but it is incompetent to do so as to the subject-matter of the contract. Hence, the text in Corpus Juris supra, 1117, sec. 1475, says:

"Parol or extrinsic evidence can not be admitted to contradict or vary terms of the contract of sale as to the property included therein, or as to the description of such property; but this rule does not preclude the admission of parol or extrinsic evidence to identify the property described and apply the description to it."

Many cases from almost every jurisdiction in this country are cited in note 68 to that text in substantiation thereof, among which are the cases of Crawford v. Livingston, 153 Ky. 58, 154 S. W. 407, 44 L. R. A. (N. S.) 640, and Travis v. Taylor (Ky.) 118 S. W. 988 (not elsewhere reported), and they, with others referred to therein, approve the rule of the text, to the effect that it is incompetent to contradict, alter, or change the *subject-matter* of a contract by contemporaneous parol testimony. In the same volume of Corpus Juris, 1125, sec. 1494, under the heading Property Conveyed, it is said:

"Where the description in a deed of the premises intended to be conveyed is clear and free from ambiguity, it can not be varied, controlled or contradicted by parol extrinsic evidence. In such case the deed must be held to be conclusive evidence as to what land was intended by the grantor to be conveyed," etc. Among the numerous cases cited in note 32 to that text are McCreary v. Skidmore, 99 S. W. 219, 30 Ky. Law Rep. 463, and Auxier v. Herald, 96 S. W. 915, 29 Ky. Law Rep. 1093.

In the same volume of Corpus Juris, 1261, sec. 1683, the text, after stating the universal rule that parol evidence is competent to identify the subject-matter of a contract when for any reason some doubt exists with reference thereto from what is said in the contract, says: ''Although if the instrument is not ambiguous as to the subject matter, but clearly designates it, parol evidence is not admissible, for in such case its only effect would be to vary the writing.'' In other words, as is pointed out in the opinions cited in support of that text, it is always competent to explain by parol testimony a patent ambiguity in the description of the subject-matter of a contract, but it is not allowable to introduce parol proof to show a different subject-matter from the one plainly expressed in the contract. A discussion of the character of consideration that may be impeached or otherwise altered by parol testimony, under the common-law exception to the general rule and our statute supra, is found in volume IV of Mr. Wigmore on Evidence, sec. 2433, and it is therein said that in some classes of contracts ''the statement of a consideration may, on the other hand, sometimes be itself an operative part of a contractual act, as when in the same writing the parties set out their mutual promises as considerations for each other; here the word 'consideration' signifies a term of the contract, and hence the writing alone can be examined.'' We, however, have no difficulty in determining in this case that the consideration for the contract sued on is such a one as may be impeached or added to by parol proof, as permitted by both the common law and our statute, supra.

A well-considered opinion, very much in point and involving the questions herein presented under somewhat similar facts, is that of Coker v. Richey, from the Oregon Supreme Court, reported in 104 Or. 14, 202 P. 551, 204 P. 945, 947, 22 A. L. R. 744. In that case a sale of an interest in a business was involved, the same as is here, and it was sought by one of the parties to prove that the written contract calling for ''all the pianos, piano players,'' etc., was not as comprehensive as the language indicated, and which contention was sought to be established by parol testimony in contradiction of the writing. No question of fraud or mistake was involved, nor was there any ambiguous language. The court held that such an effort could not be done under the exception to the general rule now under consideration, i. e., that it was com-

petent to vary the consideration expressed in a written contract by such parol proof. In arriving at such conclusion the court said:

"Reduced to its lowest terms, the effort of the defendant is to construct a contract entirely different in its terms and obligations from that expressed in the writing which both parties admit they signed. All this is attempted under the guise of explaining the consideration. It is so thoroughly settled that the consideration subject to explanation is a monetary and not a contractual one that it is unnecessary to enter into an extended re-examination of that matter."

This opinion could be greatly lengthened by further elaboration of the questions involved, and in support of the recognized distinction between the *subject-matter* of a contract and its *consideration* as affected by the exception allowing the introduction of parol evidence to alter and vary written contracts. But we have been unable to find any text or any opinion contrary to what we have hereinbefore said and which it will be perceived is confined to only two of the exceptions to the general rule regarding such testimony to vary the terms of a written contract—that of the time for its performance, and its consideration. But, for the reason stated, we deem it unnecessary to further pursue the subject, and which brings us to the question, whether plaintiffs should be allowed to show by parol testimony that the consideration agreed to be paid to them by defendant was $500 cash upon the contingencies alleged and proven, although the promise to do so was not contained in the written contract as eventually signed.

It might be insisted (and possibly properly so) that it was competent for either party to prove by parol testimony the reason and the purpose that the ink line was drawn through that portion of the contract agreeing to pay $500; but, whether so or not (and which we do not now determine), the contract as signed contained no such promise. Clearly, within the authorities, supra, and all others with which we have come in contact, that promise was a part of the consideration, i. e., it was a part of the amount of money that defendants agreed to pay for the half interest of plaintiffs in and to the partnership business, and which latter was the subject matter of the con-

tract. The contract as signed, conceding that the ink lines effectually struck therefrom the promise to pay the $500, was entered into solely upon the consideration of the agreement of defendants to release plaintiffs from the outstanding indebtedness of the firm, and the parol incorporation of the further promise to pay $500 when that indebtedness was paid, or when defendants sold the business, was nothing more than the proving of an additional consideration to the one expressed in the writing which, under the authorities supra, and all others that we have been able to discover, say may be done. In the application of what we have said, i. e., that our statute and the common-law rule permits the varying of the consideration expressed in a written contract by contemporaneous parol extrinsic testimony, but does not permit the subject-matter of the contract to be so altered, there might be in some instances considerable difficulty in determining what is the subject-matter of the particular contract under consideration, but such difficulty does not militate against the application of the principle herein determined, nor does it authorize the discarding of the distinction between the right to alter the subject-matter of a contract, and to contradict its consideration by such proof. It is sufficient to say that in this case there is no difficulty in separating the two as we have hereinbefore done.

It results, therefore, that the court did not err in allowing the introduction of the complained of evidence, nor in submitting the issues to the jury, and, since there was a preponderance of the testimony to sustain the parol proven promise, it follows that the court did not err in overruling the motion for a new trial, and for which reason the judgment is affirmed.

Whole court sitting.