## Wilson et al, v. Mitchell et al.

(Decided June 24, 1932.)

C. B. LARIMORE and DOWLING & BAIRD, RODES & HARLIN, and N. B. HUNT for appellants.

JOHN E. RICHARDSON, FAUREST & FAUREST, J. E. TARRENT, and C. E. NICHOLS for appellees.

J. P. HARRISON amicus curiae.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellees, J. B. Ferrin and Alice T. Payton, are the joint owners of a 97-acre tract of land in Hart county. On July 17, 1930, they executed and delivered to B. F. Wilson an oil and gas lease on their farm which provided that the lease should remain in force for a term of five years from its date and as long

thereafter as oil and gas or either of them should be produced from the leased premises by the lessee. The lessors were to receive one-eighth of all the oil and gas produced. The lease also contained these provisions:

"If no well be commenced on said land or said block on or before the first day of November 1930, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender the lessor * * * the sum of twenty five cents per acre per quarter, payable quarterly, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from date. In like manner and upon like payment or tenders the commencement of a well may be further deferred for like period of the same number of months successively. * * * Should the first well drilled on the above described land be a dry hole, then in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period, which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinafter provided. And it is agreed that upon the resumption of payment of rentals as above provided by the last preceding paragraph hereof governing the payment of rentals and the effect thereof, shall continue just in force as though there had been no interruptions in the rental payments. * * * It is agreed that the drilling of a well on said block of 1000 acres more or less pays the rental for the first year from date of said lease. This block is to be known as the W. C. Payton block."

When B. F. Wilson went to the home of Ferrin and Mrs. Payton to obtain the lease he was accompanied by his son, J. C. Wilson, and W. E. Payton, the son of appellee Alice T. Payton. W. E. Payton owned a 100-acre tract of land about one-half mile from the Ferrin-Payton tract. W. E. Payton had theretofore on the same day executed and delivered to Wilson a lease on his 100-acre tract of land, and it was stated in his lease that the block was to be known as the W. E. Payton block. The clause in the Ferrin-Payton lease, "this block is to be known as the W. C. Payton block," was

written by B. F. Wilson's son, J. C. Wilson. It was in-tended that the blocked acreage of which the Ferrin-Payton land was to form a part should be known as the W. E. Payton block, but J. C. Wilson, in writing the description of the block in the lease, by mistake, wrote "W. C. Payton" instead of "W. E. Payton." The leased tract of land is described in the lease with particularity, but the only description of the block of which it was to form a part is that contained in the excerpts from the lease heretofore quoted. The lease was lodged for record in the office of the clerk of the Hart county court on September 22, 1930.

On October 28, 1930, an assignee of B. F. Wilson began drilling operations on the W. E. Payton tract of 100 acres. No well was commenced on the Ferrin-Payton tract, nor were any rentals paid or tendered to the lessors of that tract on or before November 1, 1930. On November 21, 1930, Ferrin and Mrs. Payton executed a lease to J. H. Mitchell on the land which had been leased to Wilson on July 17, 1930. On the same day Mitchell assigned a one-half undivided interest in the lease to appellee John E. Richardson; Richardson assigned part of his interest to appellee T. G. Yancey; and Yancey assigned part of his interest to appellee C. J. Breeding. Mitchell, Richardson, Yancey, and Breeding commenced drilling on the Ferrin-Payton farm on November 24, 1930, and soon thereafter completed three producing wells. The well which had been commenced on the W. E. Payton farm on October 28, 1930, was completed some time in November and was a producing well.

On November 29, 1930, B. F. Wilson brought this action in the Hart circuit court, in which he sought to have the lease executed to him on July 17, 1930, declared valid and to have the lease executed to J. H. Mitchell on November 21, 1930, declared invalid. The action was based on the theory that the commencement of a well on the W. E. Payton farm on October 28, 1930, relieved the plaintiff of the duty of drilling on the Ferrin-Payton farm or paying rental on or before November 1, 1930. The circuit court held the Wilson lease invalid and the Mitchell lease valid and dismissed Wilson's petition. Wilson has appealed.

J. H. Mitchell had both actual and constructive notice of Wilson's lease on the Ferrin-Payton farm and of its terms before he took the top lease on November

21, 1930. He had examined the records in the county clerk's office and found a number of recorded leases to Wilson on tracts of land contiguous to and in the vicinity of the Ferrin-Payton tract. In each of these leases it was stated that the land leased was part of the block of 1,000 acres known as the W. E. Payton block. The lease in question was the only one which referred to the W. C. Payton block. When he was negotiating with Ferrin for a top lease, Ferrin informed him that his land was a part of a 1,000-acre tract. Ferrin refused to execute the top lease until Mitchell convinced him that the Wilson lease had expired by reason of Wilson's failure to commence drilling on the land on or before November 1, 1930, and to pay or tender the lessors the rental stipulated in the lease.

On the trial of the case parol evidence was offered by the plaintiff to show what lands constituted the 1,000-acre block referred to in the lease. It was shown that eleven contiguous tracts of land, including the W. E. Payton tract of 100 acres and the Ferrin-Payton tract of 97 acres, had been selected by Wilson to constitute the block to be known as the W. E. Payton block, and Ferrin testified that he knew before the lease to Wilson was executed what farms were to be included and that if a well was commenced on or before November 1, 1930, on any farm within the block, the payment of rentals on his land would be postponed one year from the date of the lease. Mrs. Payton testified that she knew when she executed the lease to Wilson that her land was to form part of a 1,000-acre block, but she did not inquire and was not informed at the time what other lands were included. Later she learned that certain farms in the vicinity, including that of her son W. E. Payton, where drilling was commenced on October 28, 1930, composed the block referred to in the lease signed by her, and she was satisfied with the block thus formed.

It is appellees' contention on this appeal that the Wilson lease on the Ferrin-Payton farm expired on November 1, 1930, because: (1) No well was commenced on, and no rental paid for, that farm on or before November 1, 1930; (2) the vague references in the lease to a block did not describe any particular block and, therefore, drilling on a farm claimed to be in the block did not extend the lease; and (3) parol evidence cannot be admitted to define ''said block of

1,000 acres more or less * * * to be known as the W. C. Payton block.''

Block leases are not unusual particularly in unexplored territory where land is owned in comparatively small tracts. In such territory a single tract frequently is not extensive enough to warrant the capital investment required for development purposes, but if a block of acreage of sufficient area can be secured the lessee will be warranted in assuming the expense of a test well or wells which will prove the leased territory for oil and gas.

Block leases usually provide that the drilling of one or more test wells within the block will prevent forfeiture of any of the leases. The drilling of a test well within the block is a good consideration moving to the lessors because the value of their holdings may be increased. Coffee v. Bushong, 230 Ky. 154, 18 S. W. (2d) 973; Allen v. New Domain Oil & Gas Co., 73 S. W. 747, 24 Ky. Law Rep. 2169.

Appellees' contentions all center around the claim that the lease in question comes within the purview of the statute of frauds and that parol evidence is not admissible to define the 1,000-acre block. Appellant insists that appellees cannot now invoke the statute, since they failed either to file a general demurrer to the petition, deny the existence of the contract, or specially plead the statute, which are the only methods by which a defendant may take advantage of it. But, waiving that question, we have concluded that the statute is not applicable since the parol evidence complained of was admissible for the purpose of showing the consideration. Appellees cite and rely upon a line of cases of which Kentucky Counties Oil Co. v. Cupler, 204 Ky. 799, 265 S. W. 334; Kash v. United Star Oil Co., 192 Ky. 422, 233 S. W. 898; and Justice v. Justice, 239 Ky. 155, 39 S. W. (2d) 250, are illustrative; but in all of these cases the right to prove by parol evidence what land was sought to be conveyed was the question involved.

Here the land in which an interest was conveyed was described with sufficient particularity in the lease to identify it and thus to satisfy the statute. That was the land which was the subject-matter of the contract. No interest in the block referred to was being conveyed, but part of the consideration for the lease was the

lessee's promise to drill a well on the leased land or other land in the vicinity for the purpose of exploration which would be mutually beneficial to the parties. For the lessee a test well would prove for oil and gas a large acreage, whereas, due to the risk involved, it would not be good business practice to incur the same expense to test a single tract. For the lessor a well drilled sufficiently near his land to test it for oil and gas would, if a producing well, increase the value of his land and lead to its development and the payment to him of royalties. In undeveloped, or what is known as "Wildcat," territory, the owner of a small tract of land would as a rule be unable to have his land tested and developed except under the blocked acreage plan.

It will be noted that the lease to Wilson contains different provisos depending upon whether a well is drilled on the lessors' land or on other land within the block of which their land forms a part. If a producing well is drilled on the leased land, the necessity for the payment of rental is dispensed with and the lease is effective as long as oil or gas is produced in paying quantities; and if a dry hole is drilled, the payment of rentals is suspended for a year. On the other hand, the drilling of a well on other land within the block merely pays the rental for lessors' tract for the first year from the date of the lease. The drilling of a well within the block but off the lessors' land is a substituted consideration. The contract provides that if a well is not commenced on the leased land on or before November 1, 1930, certain rentals must be paid; but it further provides that the drilling of a well on other land within the block will suspend the payment of rentals for one year. Thereafter the contract stands as though it contained no such provision. The drilling of a well within the block is treated in the contract as equivalent to one year's rental. Being a part of the consideration, the exact limits of the 1,000-acre block referred to in the lease may be shown by parol testimony.

Section 470 of the Kentucky Statutes, which is our statute against frauds and perjuries, expressly provides that the consideration need not be expressed in the writing but may be proved when necessary or disproved by parol or other evidence and, in construing this section, it has been held that the consideration may be proved by parol, even if to do so involves con-

tradiction of the writing. Campbell v. Preece, 133 Ky. 572, 118 S. W. 373. Nor is the consideration which may be proved by parol limited to a strictly monetary consideration. Ewing v. Stanley, 69 S. W. 724, 24 Ky. Law Rep. 633.

In construing section 472 of our Statutes, which reads, "The consideration of any writing, with or without seal may be impeached or denied by pleading verified by oath," this court, in Apple v. McCullough, 239 Ky. 74, 38 S. W. (2d) 955, pointed out the distinction between the subject-matter of a contract and the consideration. In Willis' Thornton on the Law of Oil and Gas (5th Ed.) vol. 2, p. 859, it said:

> "Where the lease required the lessee to drill a well within a block of land in the vicinity of the leased land, and the block is not described with certainty, parol evidence may be introduced to show what land was intended."

In McCaskey v. Schrock (Tex. Civ. App.) 225 S. W. 418, the court had under consideration a block lease which provided that the failure to commence a well within one year within the block should operate as a forfeiture of the lease. The lease did not identify the lands constituting the block, but by oral proof it was shown that the block consisted of about 136,000 acres of land, and that within the year specified in the lease under consideration the lessee commenced a well on land within the block about sixteen miles from the land covered by the lease in question. It was argued in that case that the lease contract was unilateral, unsupported by an independent consideration, and therefore terminable at the will of the lessors. The court held, however, that the provision of the contract requiring the lessee to begin drilling a well within the block within one year for the purpose of testing the block for oil and gas was a sufficient consideration for the rights granted by the lessors and the parol evidence was admissible to show what lands constituted the block. The court based its ruling on the theory that the contract was uncertain in identifying the particular lands which the parties had in mind upon which the well might be drilled and that extrinsic evidence was admissible to clear up the uncertainty. To the same effect are Sunshine Oil Corporation v. Dooley (Tex. Civ. App.) 238 S. W. 357, 360; McCaskey v. McCall

(Tex. Civ. App.) 226 S. W. 432; Leath v. Humble Oil & Refining Co. (Tex. Civ. App.) 223 S. W. 1022. If, however, drilling of a well within the block constitutes a part of the consideration for the rights granted by the lessors, as was held in these cases, parol evidence is admissible under our statutes to identify the lands included within the block as a means of showing the consideration.

Of the eleven designated farms which were to constitute the block, Wilson failed to secure leases on two, and on three only the life tenant executed the lease. It is argued that even if parol evidence is admissible to define the block, the block agreed upon was never formed. Both Ferrin and Mrs. Payton understood that the W. E. Payton tract, on which drilling was commenced on October 28, 1930, was a part of the block, and after all the leases had been taken and the block formed they knew what farms were included, and both testified that they were satisfied with the block as thus formed. The W. E. Payton tract had been leased when they executed the lease on their land, and, whatever lands were finally included in the block, appellees could not complain so long as a well was commenced within the specified time on the W. E. Payton tract.

It is argued that Mitchell and his assignee are innocent purchasers for value, since the lease states the Ferrin-Payton land is in the W. C. Payton block instead of the W. E. Payton block. The lessors knew that their farm and the W. E. Payton farm were in the same block and Mitchell had seen the recorded lease in the clerk's office and knew it was a block lease. His assignee also had this information. This was sufficient to put them upon notice and to impose upon them the duty of making some inquiry as to what land constituted the block. The records in the clerk's office showed that the contiguous land' was in the W. E. Payton block and that no other lease referred to a W. C. Payton block. There was a W. C. Payton who owned a small tract of land several miles from the Ferrin-Payton tract, and his land was leased to Wilson but was in a block known as the Nunn block. A simple inquiry addressed to the lessors or Wilson would have led to a discovery of the true facts.

We conclude that the lease executed by the appel-

lees Ferrin and Mrs. Payton to B. F. Wilson was a valid subsisting lease at the time the top lease was executed to Mitchell, and that the lower court erred in adjudging it had terminated on November 1, 1930.

Wherefore the judgment is reversed, with directions to enter a judgment in conformity herewith.

The whole court sitting, except Judge Richardson, who took no part in the consideration of the case.