R. E. SMITH, RECEIVER, v. TEXAS & NEW ORLEANS RAILROAD
COMPANY ET AL.

No. 1801.    Decided March 11, 1908.

**1.—Written Contract—Parol Evidence—Indentifying Property—Latent Ambiguity.**

Though parol evidence is not admissible to show that property described
in a written contract was not intended to be embraced, yet in case an ambiguity is disclosed in applying the description to certain property, it may be
admitted to show that the parties di.. not intend to include it under the
description.    (P. 409.)

**2.—Same—All Property Owned—Case Stated.**

The owner of some tank cars made a contract for their sale, placing
them in the hands of a trustee for use, and providing that on failure of the
purchaser to pay the price by a day named the cars and the profits of
their use shall be returned to the seller.    The cars being thus held, the
owner made a mortgage to a third party of certain specified property, and also
of "all other property . . . now owned" by him.    Under foreclosure and
sale of the mortgaged property as a whole, a purchaser obtained possession of
the cars as passing thereby, and was sued by the owner for conversion, for
which he was liable if the cars were not embraced in the property mortgaged.
Held that the contract of conditional sale amounted to little more than an·
option for purchase (the buyer never made payment) and the cars were
legally still owned by the seller when he executed the mortgage; but that
the condition of the title was such as to create question as to whether the
mortgagor meant to include them under the description of property owned by
him; and parol evidence that they were not intended to pass, and being first
specifically included in the mortgage, were purposely struck out should have
been admitted.    (Pp. 407, 408.)

**3.—Damages—Conversion—Mortgagor.**

Questions suggested as to the measure of damages recoverable by a mortgagor for conversion and use of the property prior to the time when by his
default in payment the mortgagee became entitled to possession.    (P. 410.)

**4.—Bailment.**

The claim of the true owner of property can not be resisted by a bailee
on the ground that he acquired his possession from another.    He can protect
himself by a bill of interpleader.    (P. 410.)

**5.—Conversion—Purchaser Under Foreclosure.**

One purchasing at foreclosure sale and transferring the right so acquired to another does not thereby become liable for conversion of property
taken possession of by his assignee under color of such right but not in fact
passing by the mortgage and sale.    (Pp. 410, 411.)

Error to the Court of Civil Appeals for the Fourth District, in
an appeal from Jefferson County.

Smith, as receiver, sued the Texas & New Orleans Railroad Company and others.    Defendants had judgment and plaintiff, having
appealed, on affirmance obtained writ of error.

*Robertson & Whitaker,* and *Mollette & Wilkerson,* for plaintiff
in error.—The mortgage on its face and by the terms of the description contained therein, did not comprehend and was not intended to comprehend these cars, because general words used in

connection with a special enumeration of particular articles ordinarily refer to articles of the same general nature as those specifically named. Jones on Chattel Mortgages (2d ed.), sec. 77; 1 Cobby on Chattel Mortgages, sec. 163; Dixon v. Coke, 77 N. C., 205; Smith v. McCullough, 104 U. S., 25.

A description such as is contained in this mortgage, to wit: "Also any and all other property owned by the party of the first part situated in Jefferson County, Texas," is too indefinite and is ineffectual to pass anything. It is generally not a sufficient identification by way of location to say that chattels are in a certain county. For this reason the mortgage did not comprehend these cars. 6 Cyc. of Law and Procedure, 1024; Jones on Chattel Mortgages (2d ed.), sec. 55; Muir v. Blake, 57 Iowa, 621.

The mortgage in question did not comprehend these cars, because they were not owned by the Equitable Land & Oil Company, the mortgagor, at the time of the execution of the mortgage, at least within the meaning of this term as understood and interpreted by the parties themselves.

Written descriptions of the property in chattel mortgages are to be applied and interpreted in the light of the facts known to and in the minds of the parties at the time the mortgage was made. They are not prepared for strangers, but for those they are to affect, the parties and privies; and those subsequently dealing with the property must learn these facts, so as to place themselves in the same position as the original parties. Ft. Worth Nat. Bank v. Red River Natl. Bank. 84 Texas, 370; Willey v. Snyder, 34 Mich., 60, 61; 1 Cobby on Chattel Mortgages, sec. 155.

We most respectfully insist that the bill of sale executed by the Equitable Land & Oil Company to M. T. Brown for the seventy-five cars, and by the latter assigned to the Richmond Transportation Company, who took possession and operated said cars, was intended to and did vest title to the cars in the Richmond Transportation Company, which title was subject to be divested upon the non-performance of a condition subsequent. In a word, the contract of sale was one vesting title to the cars in the Richmond Transportation Company, with the retention of a lien by the vendor to secure the purchase money. Luckett v. Townsend, 3 Texas, 119; Fowler v. Stoneum, 11 Texas, 508; Soell v. Hadden, 85 Texas, 183; Benjamin on Sales, sec. 309; Tiedman on Sales, sec. 5; Beardsley v. Beardsley, 138 U. S., 262; Elgee Cotton Cases, 22 Wall., 180; Arkansas Cattle Co. v. Mann, 130 U. S., 76; 6 Am. & Eng. Enc. Law, 470; 1 Mechem on Sales, secs. 34, 591, 676, 686: Gulf, W. T. & P. R. R. Co. v. Browne, 66 S. W. Rep., 343; Wahles v. Overaker, 77 Texas, 11.

Parol evidence is inadmissible to vary or change a written instrument, but may aid in interpreting a latent ambiguity, and thereby give the instrument the meaning that was in the minds of the parties at the time of its execution. Kirk v. Brazos County, 73 Texas, 59; Ft. Worth Natl. Bank v. Red River Natl. Bank, 84 Texas, 370; Jones on Chattel Mort., secs. 53, 54, 54a; Robinson v. Jones, 2 Texas Civ. App., 321.

*A. T. Watts* and *Chester & DaPonte,* for National Supply Company, defendant in error.—The court did not err in instructing a verdict for the National Supply Company because the undisputed evidence shows that the cars in controversy were not converted by it, and that the receiver's rights in said cars, if any he had, were in no way interfered with by said company. A mere paper sale of a chattel without depriving the owner of possession is not sufficient to constitute a conversion. 28 Am. & E. Enc. Law, 700, & n. 2; Heighes v. Dollarville Lumber Co., 113 Mich., 518; Davis v. Buffum, 51 Me., 160; Horak v. Thompson, 83 N. W. Rep., 889; Presley v. Powers, 82 Ill., 125; Burnside v. Twitchell, 43 N. H., 390; Bishop v. Hendrick, 31 N. Y. Supp., 502; Andrews v. Shattuck, 32 Barb., 396; Thorp v. Robbins, 33 Atl. Rep., 896; Murrel v. Scott, 51 Texas, 520; 28 Am. & Eng. Enc. Law, 765; Ward v. Newell, 37 Texas, 261.

*Baker, Botts, Parker & Garwood,* for Texas & N. O. R. R. Co., defendant in error.—Upon the facts disclosed by the record the court did not err in instructing a verdict for the Texas & N. O. R. R. Co. Rev. Stats., arts. 641 subd. 56, 4494, 4496, 4580; Constitution, art. 10, sec. 12; Smith on Receivers, sec. 58 and note, sec. 59 and note; Beach on Receivers, 216-231; Stroup v. Bridger, 100 N. W. Rep., 113; Edwards v. White Line Transit Company, 104 Mass., 159.

Mr. Chief Justice Gaines delivered the opinion of the court.

This suit was brought by R. E. Smith as receiver of the Equitable Land & Oil Company against the Texas & New Orleans Railroad Company and other defendants to recover damages for the conversion and use of seventy-five tank cars, alleged to be the property of the Equitable Land & Oil Company.

The litigation grew out of the following facts: The Equitable Land & Oil Company, on the 31st day of October, 1901, bought the cars of the American Car & Foundry Company, paying twenty-five per cent of the purchase price and executing its mortgage to the vendor for the unpaid balance. On the 13th day of November, 1902, the Equitable Land & Oil Company executed to the National Supply Company a mortgage to secure the payment of a note to the latter company for the sum of $14.649.32. This mortgage in specifying the property conveyed, described specifically three tracts of land, certain tanks, pipe lines, etc., and added "also any and all other property, real, personal or mixed, now owned by the party of the first part, situated in Jefferson County, Texas." On the 7th day of July, 1903, Taber, under the power given in the National Supply Company's mortgage, sold the property described therein at public auction and, the Supply Company being the highest bidder therefor, it was knocked off to it. That company immediately transferred the rights which had accrued under the bid to Seymour Kisch, one of the defendants herein, Kisch assuming all its obligations under the bid. By virtue of this transaction Kisch got possession of the cars.

On the 2d day of ' June, 1904, in the proceeding in which the plaintiff in error was appointed receiver of the Equitable Land & Oil Company upon a petition of the American Car & Foundry Company a decree was entered ordering a foreclosure by sale of the property of the mortgage of the latter company upon the tank cars originally given to it to secure the unpaid purchase price thereof. A sale was made in pursuance of the decree to the American Car & Foundry Company and was reported to the court. The report was approved and the sale confirmed and the trustee was ordered to make title to the purchaser.

On the 29th of October, 1902, the Equitable Land & Oil Company made a contract with one H. D. Fletcher, as trustee for M. T. Brown, for the sale of the seventy-five cars by which the cars were to be delivered to Fletcher as trustee to be used by him for sixty days on condition that Brown should pay therefor at the expiration of that time the sum of $15,135 to fall due upon a note executed by said company to one A. L. Williams, the payment of which Brown had assumed. Under the terms of the contract the profits to arise from the use of the cars were to be the property of the trustee. But if the consideration was not paid by the end of sixty days, then the cars were to revert to and become the property of the Equitable Land & Oil Company and possession thereof and all profits which had accrued from their use should be returned to it. M. T. Brown on the 31st day of October, 1902, transferred all his rights under the contract to the Richmond Transportation Company, an alleged corporation.

It is thus seen that nearly one year elapsed from the time that Kisch got possession of the car, until the foreclosure of the American Car & Foundry Company's mortgage. Leaving out of view the effect of the sale by Taber, trustee, until the foreclosure of the American Car & Foundry Company's mortgage, the legal title of the cars with the right of possession was in the mortgagor, the Equitable Land & Oil Company, and the receiver is entitled to recover against one who converted the property during that time.

This brings up the question, can Kisch justify his action by virtue of any title acquired by him under the sale by Taber? In short, the question is, were the cars embraced in the property which was described in the mortgage of the National Supply Company? It is claimed by defendants in error first, that it was not, for the reason that it had been sold to Brown and by him to the Richmond Transportation Company. But it is seen from what has already been stated, that the contract between the Equitable Land & Oil Company and Brown (which Brown transferred to the Richmond Transportation Company) was a sale upon condition that the cars were paid for in sixty days and that the money was never paid. We hardly think, that under the circumstances the Richmond Transportation Company could be deemed the owner of the cars.

The Court of Civil Appeals held, and perhaps correctly, that the Richmond Transportation Company was not a corporation. But we deem that unimportant. Because if the holders of the interest in that concern were not protected as corporators, they would still take

as partners and the contract with the alleged corporation would not be void on that account. But the contract did not transfer the title and it could be deemed but little more than an option to purchase.

But it was contended on behalf of the receiver that the parties to the contract did not regard the tank cars as property "owned" by the Equitable Land & Oil Company, and, in support of that contention, the plaintiff in error "offered in evidence the depositions of M. T. Brown to show that he as general manager of the Equitable Land & Oil Co., negotiated and executed the mortgage or deed of trust referred to with W. H. Wilson, the general manager representing the National Supply Co., and at the time he fully explained to said Wilson the situation with reference to said cars, and that they had been sold to the Richmond Transportation Co., and that the said Wilson fully understood that they were not embraced in said mortgage; and further that by mistake the first draft of said mortgage or deed of trust did embrace said cars, and on attention being called to it, the same was redrafted and reformed, and said cars left out of it." The evidence, upon objection, was excluded by the court and in this we think there was error. Now at the time of the execution of the deed of trust in question it was a question of some nicety whether the cars in view of the contract that had been entered into for their conveyance could be said to be owned by the mortgagor in the deed of trust. It is an elementary rule that parol evidence is not admissible to vary the terms of a written contract. But if when we come to apply the description of property in a conveyance an ambiguity or a doubt is disclosed, as to whether the property is embraced within the description a different rule obtains and it is permissible to prove by oral testimony what property the parties meant to embrace. The principle is illustrated by the decision in the case of Thorington v. Smith (8 Wall., 1). In that case at Montgomery, Alabama, in 1864, Smith and Hartley executed to Thorington their note for "ten thousand dollars" without any qualifying words as to the money. This question was certified to the Supreme Court of the United States: "2. Can evidence be received to prove that a promise expressed to be for the payment of dollars was, in fact, made for the payment of any other than lawful dollars of the United States?" After discussion of the question it was answered as follows: "We are clearly of opinion that such evidence must be received in respect to such contracts, in order that justice may be done between the parties, and that the party entitled to be paid in these Confederate dollars can recover their actual value at the time and place of the contract, in lawful money of the United States." The same ruling was made by the same court in the Confederate Note Case (19 Wall., 548). There was no ambiguity as to the meaning of the word "dollars." But the court knowing that during the war between the States Confederate money was the only money used by the people of that section, and that "dollars" usually meant by them "dollars" in that currency, held that parol evidence was admissible to show what kind of money was meant. Here we have

a description in a mortgage "all other property owned" by the mortgagor. In order to apply the description to any specific property we have to ascertain what property the mortgagor owned. When we come to apply the description in question to the property claimed under the mortgage, we are confronted with the fact, that at one time the mortgagor held the legal title to the tank cars, but had entered into a contract of sale, conditional though it may be, under which the proposed purchaser was entitled to their possession. However clear the title might appear to be to a lawyer, it is obvious that to ordinary business men, there would be grave doubt as to the question. We think that under the circumstances, parol evidence is admissible to show what the parties to the agreement meant by "owned," and that they did not understand that the tank cars were so owned by the mortgagor. We are of opinion that the court erred in excluding the evidence.

As we have previously said, since the receiver had the legal title to the cars at the time Kisch took possession, he is entitled to recover for their conversion. What the measure of his damages is, we are not called upon to determine. Is he entitled to the full value of the cars, unencumbered, or only to the value of their hire until they were sold under the American Car & Foundry Company's mortgage? That mortgage entitled the mortgagee upon default on part of the mortgagor to the possession and use of the cars. What effect should this have upon the question of damages in the case? And if it be answered that the mortgagee did not exercise its right and did not take possession of the cars, what effect does the receivers proceeding in enjoining action on part of the mortgagee have upon the case? We merely throw these out as suggestions in view of another trial.

But it is urged on behalf of the Texas & New Orleans Railroad Company that since it had received the cars of Kisch as a common carrier, it was bound to return them to him and is guilty of no wrong in having done so. But the law is, that the bailee can not successfully resist the claim of the true owner. If the bailor have no title he can give none to his bailee. (Roberts v. Yarboro, 41 Texas, 449.) The rule, though seemingly harsh, is not so from the fact that the law will allow the bailee time in which to determine his rights (Roberts v. Yarboro, supra), and will always protect him by permitting him to file his bill of interpleader, in which the right will be determined and he will be answerable only to the party who establishes his right.

There is no assignment of error in the Court of Civil Appeals that the court erred in rendering judgment on motion for rehearing in favor of E. A. Sterling, E. A. Sterling & Company and the Vulcan Oil Company and therefore the judgment in their favor can not be disturbed.

We are of opinion, however, that no case for conversion of the cars was made against the National Supply Company. The property at its foreclosure sale was bid off by it for a lump sum. In the notice of the sale, the property is described precisely as in the mortgage, no mention being made of the tank cars. The

transfer to Kisch is simply of its rights under the bid, no allusion whatever being made as to the cars. In the trustee's conveyance to Kisch in pursuance of the transfer of the bid, the cars are mentioned as a part of the property conveyed; but we fail to see that the Supply Company should be responsible for such action on part of the trustee. We think the judgment in favor of that company ought to be affirmed.

Our conclusion is that the judgment as to Kisch and the Texas & New Orleans Railroad Company ought to be reversed and the cause remanded, but that as to the other parties it ought to be affirmed. It is accordingly so ordered.

*Reversed and remanded in part and affirmed in part.*