**NELSON et al. v. RICHARDSON et al.**
**(No. 2872.)**

Court of Civil Appeals of Texas. Amarillo. Oct. 5, 1927.

Rehearing Denied Nov. 9, 1927.

1. **Depositaries ⬖⟿4—Vendor held entitled to defaulting purchaser's deposit under contract for its surrender as liquidated damages, notwithstanding purchaser's secret agreement permitting bank holding deposit to apply it on purchaser's loan.**

In action by vendor against purchaser and bank as holder of deposit to recover purchaser's deposit on purchaser's default in accordance with terms of contract providing for its payment as liquidated damages on such default, vendor *held* entitled to recover, despite secret agreement entered into between bank and purchaser by which bank was permitted to use such money in payment of its loan to purchaser.

2. **Depositaries ⬖⟿4—Mere holder of purchase-money deposit held not entitled to determine whether sales contract had been complied with.**

Bank holding purchase-money deposit, where not party to sales contract, was not entitled to pass on question whether terms of contract had been complied with.

3. **Depositaries ⬖⟿4—Bank, holding purchase-money deposit, held mere trustee, required to pay deposit to vendor on his compliance with contract.**

Where first payment under sales contract was deposited with bank in escrow, bank had interest in subject-matter of vendor's suit, claiming such deposit as liquidated damages for purchaser's default only as trustee, and was required to pay sum to vendor on his compliance with terms of sales contract.

4. **Depositaries ⬖⟿4—Defense that vendor had subsequently resold property at profit held not available to holder of deposit sued with purchaser for deposit as liquidated damages.**

In action by vendor against purchaser and holder to recover escrow deposit as liquidated damages on purchaser's default, holder, where not party to sales contract, could not assert defense that vendor had subsequently resold property at profit.

5. **Damages ⬖⟿85—Right of vendor to liquidated damages on purchaser's default held not defeated by vendor's subsequent resale of property at increased price.**

Where contract for sale of real property provided for vendor's recovery of escrow deposit as liquidated damages on purchaser's default, vendor's right to recover such damages was not defeated by fact that vendor subsequently resold property to different purchaser at substantial profit over amount which original purchaser had agreed to pay.

6. **Damages ⬖⟿85—Defaulting party to sales contract will not be permitted to rely on subsequent resale to destroy contract fixing damages.**

Parties at time of signing sales contract have right to fix damages by agreement and may not speculate as to whether breach would cause damage, and defaulting party will not be permitted to rely on subsequent resale to destroy contract fixing damages.

7. **Pleading ⬖⟿387—Plaintiffs can recover only on allegations of their petition.**

In order for plaintiffs to recover, they must have recovered on the allegations of their petition.

8. **Judgment ⬖⟿652—Default judgment against purchaser, not appealed from, held conclusive as against holder of deposit on question whether deposit was penalty or liquidated damages.**

In action by vendor against purchaser and holder to recover deposit in escrow as liquidated damages on purchaser's default, default judgment against purchaser for amount of deposit, where not appealed from, *held* conclusive as against holder on question whether escrow money was penalty or liquidated damages.

9. **Damages ⬖⟿208(1)—Whether purchaser's deposit was intended as liquidated damages or penalty held question of law in vendor's action against purchaser and holder of deposit.**

In action by vendor against purchaser and holder of deposit to recover escrow deposit as liquidated damages, question whether deposit

was intended as liquidated damages or as penalty *held* question of law for court.

Appeal from District Court, Wheeler County; W. R. Ewing, Judge.

Suit by Ida Nelson and others against O. G. Richardson and another. Judgment for plaintiffs against defendant Richardson only, and plaintiffs appeal. Reversed, and judgment rendered.

Will Crow, of Canadian, for appellants.

J. W. Sanders, of Canadian, for appellees.

RANDOLPH, J. This suit was originally instituted by the appellants, as plaintiffs, to recover the sum of $800, plus interest, placed in escrow in the Guaranty State Bank, in the matter of a contract for the sale and purchase of a tract of land by plaintiffs to defendant Richardson. The said State Bank was taken over by the First National Bank of Wheeler, Tex. The suit therefore was continued as against said last-named bank, under its liability on its assumption of liabilities of said bank.

The matters of fact, as well as of law, were submitted to the trial court, and that court rendered judgment by default in favor of the plaintiffs against the said Richardson, for the amount claimed by them, and further that plaintiffs take nothing by their suit against the defendant the First National Bank of Wheeler, Tex. From this last judgment, plaintiffs have appealed to this court.

The facts upon which the judgment was rendered, as disclosed on the trial, are substantially as follows:

Will Crow, an attorney residing in Canadian, Hemphill county, was the agent of plaintiffs in the sale of the land involved in the contract in this suit. He entered into negotiations with defendant Richardson to purchase said land for the sum of $3,800. It was agreed that Richardson should deposit $800 in escrow to secure the trade, and he did this, returning to Crow with a deposit slip for that amount, and the parties then signed and executed the following sales contract:

"Contract for the Sale of Land.

"The State of Texas, County of Hemphill.

"This memorandum of an agreement made and entered into on this 29th day of December, 1923, by and between the Nels Hanson heirs, to wit, Betsy Hogstrom, joined by her husband, John Hogstrom, Ellen Bruce joined by her husband, Charles Bruce, Ida Nelson joined by her husband, George Nelson, John Hanson, Luther Hanson, and E. F. Iddings, trustee of the property of Hannah Mertz, under the last will of Nels Hanson, deceased, all of Montgomery county, state of Iowa, hereinafter called parties of the first part, and O. G. Richardson, of Hemphill county, Tex., hereinafter called party of the second part, witnesseth:

"(1) That the parties of the first part have this day bargained and sold, and by these pres-

299 S.W.—20

ents do hereby bargain, sell, and obligate themselves to convey or cause to be conveyed in the manner and way hereinafter stated unto the said party of the second part, all and singular the following described property, to wit: All of the E. ½ of section No. 19 in block No. Z-1, Beaty, Seals & Forwood, original grantees, Certificate No. 1800, lying and being situated in Hemphill county, Tex.

"(2) The consideration paid and agreed to be paid to the parties of the first part by party of the second part for the within described land is the agreed sum of $3,800, to be paid as follows:

"In cash, the sum of $800, which is put up by the party of the second part in escrow account in the Guaranty State Bank of Wheeler, Tex., in favor of the parties of the first part, and being evidenced by a certain escrow deposit slip, which is in words and figures substantially, as follows:

"'Deposited with Guaranty State Bank, Wheeler, Tex. Escrow account by O. G. Richardson. and owners of E. ½ section of land where Mount Tipps has been living.

| | Dollars | Cents |
|---|---|---|
| Currency ....................................... | | |
| Gold ............................................... | | |
| Silver ......................................... | | |
| Checks as follows:...................... ........ | 700 | 00 |
| | 100 | 00 |
| | 800 | 00 |

"To be paid over to said present owners of land when deal is consummated and O. G. Richardson's attorney O. K.'s title to land. Will Crow, Atty.
9.
M.
"Duplicate.         Total, $———.'

"Said duplicate deposit slip hereto attached and made a part of this contract. The receipt of which is hereby acknowledged by the parties of the first part, and the balance the same, being the sum of $3,000, to be paid over on or before the 10th day of February, 1925, in the manner and way hereinafter specified.

"(3) Parties of the first part agree to convey said within described land by deeds of conveyances as follows: A general warranty deed conveying an undivided five-sixths interest in and to said within described land. Said deed of conveyance to be duly executed and acknowledged by said Ida Nelson and her husband, George Nelson, John Hanson and his wife, Hulda Hanson, Betsy Hogstrom and her husband, John Hogstrom, Luther Hanson and wife, Laura J. Hanson, and Ellen Bruce and her husband, Charles Bruce, to Will Crow, of Hemphill county, Tex.

"A trustee's deed conveying an undivided one-sixth interest in and to said within described land. Said trustee's deed to be duly and legally executed and acknowledged by the said F. R. Iddings, trustee of the property of Hannah Mertz, under the last will of Nels Hanson, deceased, under the order of the probate court of Montgomery county, Iowa, and duly approved by the district court of Montgomery county, Iowa, conveying said undivided one-sixth interest in and to said land to Will Crow of Hemphill county, Tex. It being understood and agreed that said last will of Nels Hanson, deceased, has been duly and legally probated in the probate court of Montgomery county, Iowa, and that the trusteeship proceedings of Hannah Mertz under said will is now pending in said court. It being further understood and agreed

by and between the parties to this contract that said deeds of conveyance of said within described land as herein described is to be made in this manner and way to the said Will Crow, at the special instance and request of the said O. G. Richardson, to enable the said O. G. Richardson to procure a loan upon the within described land from the said Will Crow. The said two deeds of conveyance, above described, are to be delivered by the 10th day of February, A. D. 1925, through the Canadian State Bank of Canadian, Tex., at which time and place the said party of the second part will pay the sum of $3,000 in cash, and the sum of $800, put up in escrow, as aforesaid herein, making the total consideration of $3,800.

"(4) It being understood and agreed that the parties of the first part desire until February, 10, 1925, to perfect the title to the within described land.

"(5) Parties of the first part agree to furnish a complete abstract of title covering said within described land brought down to date by a reputable abstractor of Hemphill county, Tex. And that said abstract of title must show a record marketable title in and to said land in the said Nels Hanson, deceased, at the time of his death, on or before said February 10, 1925. And further, that said parties of the first part are also to furnish with said deeds of conveyances, and at the time of the delivery of said deeds of conveyances, a full and complete copy of the probate proceedings of the said last will of Nels Hanson, deceased, and also a complete certified copy of the probate and court proceedings in the matter of the trusteeship of Hannah Mertz, under the last will of Nels Henson, deceased. And it is further agreed that said abstract of title, deeds of conveyance, and certified copies of probate proceedings of the last will of Nels Hanson, deceased, and probate and court proceedings in said trusteeship of Hannah Mertz are to be examined and approved by O. G. Richardson's attorney, Will Crow, of Canadian, Tex.

"(6) It is further expressly understood and mutually agreed by and between the parties to this contract that the sum of $800, put up in escrow by said party of the second part in favor of the parties of the first part, in the Guaranty State Bank of Wheeler, Tex., as hereinbefore set out and described, shall be as a forfeit, and, if the party of the second part fails and refuses to comply with the terms of his contract, then the parties of the first part shall be entitled to retain the said $800 as liquidated damages for the loss or damage they may have suffered by reason of the default of the said party of the second part. And it is further understood and agreed that in case of said default by the said party of the second part said Guaranty State Bank of Wheeler, Tex., the holder of said escrow deposit, is to pay over said sum of $800 to the said parties of the first part upon written demand being made upon said bank by the attorney of the said parties of the first part or by said parties of the first part themselves. But, in the event the title of the within described land fails to comply with the conditions of this contract, then the party of the second part shall not be required to accept said title and he shall be entitled to the return of the said sum of $800, put up herewith as a forfeit in escrow account in said Guaranty State Bank of Wheeler, Tex.

"Witness our hands this the 29th day of December, A. D. 1923, in duplicate.

"Betsy Hogstrom, John Hogstrom, Ellen Bruce, Charles Bruce, Ida Nelson, George Nelson, John Hanson, Luther Hanson, F. R. Iddings, Trustee of the property of Hannah Mertz, Parties of the First Part.

"O. G. Richardson, Party of the Second Part."

It was known to Crow that Richardson did not have the $3,000, and as the owners of the land required all cash, Crow had arranged with Richardson to let him have the $3,000 in cash, to make the full cash consideration, and then to let Richardson secure a loan on the land to reimburse him (Crow).

It appears that Richardson not only did not have the $3,000, but did not have the $800 he was to pay Crow as the first payment on the land, and that he had gone to the bank and negotiated a loan from the bank of $700, which, together with $100 he had, was deposited in the bank, under the escrow agreement above recited.

On the 1st day of January, 1924, Richardson moved into the improvements on the land. On the 6th day of February, 1925, Crow had a conversation with Mr. McCrohan, cashier of the defendant bank, in which McCrohan told him that he had been too long in perfecting the title, and that he would not pay the escrow deposit to him; further, that he had made a loan to Richardson, and that as Richardson had not paid the note given for that loan, he was going to use the escrow money to pay such note. During this conversation, Richardson came into the bank and asked Mr. McCrohan to pay over the money, that he wanted to buy a home, and that if McCrohan did not pay over the money, he could not make the purchase of the land. This was again refused.

Crow testifies, as does Richardson, that the bank's refusal to pay over the money rendered Richardson unable to close the deal; that the terms of the contract had been complied with; and that Crow had executed and tendered to Richardson, together with his opinion that the title was all right, a deed from Crow and wife to Richardson, and deeds from the plaintiffs to Crow. Crow further testifies that he made another demand on the bank for the payment of the $800 escrow, and gave notice that if same was not paid within 5 days suit would be instituted to recover same.

On the 24th day of February, 1925, Crow sold the land to one Helton for the sum of $4,437.50.

The plaintiffs' petition sets out their cause of action, based substantially upon the above facts, and prays for a recovery against the defendant Richardson and the bank of the sum of $800, plus interest from December 29, 1923, at the rate of 6 per cent. per annum, jointly, and in the alternative, for judgment against such of the defendants as the court

may hold liable to them, for costs, and for general and special relief.

The defendant, Richardson, as stated, made default. The defendant bank filed its answer consisting of general and special exceptions, general denial, and specially answering:

(1) That the defendant bank had no contractual relations with the plaintiffs, and only assisted Richardson in buying the land by making him a loan of $700, and that said sum, together with the $100 which Richardson had, should be placed on special deposit in defendant bank, to be used in making the cash payment on the land, which Richardson told defendant bank he could buy for something like $3,000 by paying down the sum of $800 cash on receipt of deed; and the said $800, in pursuance of said arrangement, was placed in a separate account in defendant bank, and a deposit slip issued, designating the purpose for which it was to be used, and said deposit was to be subject to the check of Richardson only for the purpose of making the cash payment on the land when the same was consummated; that said loan was made for 6 months' time only, and for the purpose of making a cash payment upon the land within the period of the loan, the defendant reserving the right to take down the money to apply it on the note of the said Richardson, and Richardson reserving the right to recall the money so placed on special deposit; that the defendant Richardson induced the defendant bank to make the loan for the purposes stated, by representing to the bank that he could purchase the land for something like $3,000, procure a deed to same, reserving a lien to secure the unpaid balance of the purchase price, and consummate the deal within the period of 6 months' loan; that he would require an abstract of title, disclosing merchantable title to the land, before closing the deal; that at the time of the making of said special deposit no contract had been entered into between plaintiffs and Richardson, and, if any contract was made by them, it was made after the date of said special deposit, and defendant bank was not furnished with a copy of same, nor did it know any of the terms of the contract except what Richardson told them more than a year after the making of said deposit, and defendant bank has never at any time assented to any of the terms of said contract, or agreed to become bound or liable to plaintiffs, for the delivery of said deposit; that after the expiration of the period of the loan to Richardson, and before any demand had been made for the delivery of the money to the plaintiffs, Richardson directed the bank to use said deposit in settlement of his note, evidencing the loan of $700, which formed a part of the deposit, and it was so applied and at that time the defendant bank knew nothing about the terms of the said contract between plaintiffs and Richardson.

Defendant bank further alleges that before any request or demand, under the terms of said contract of sale, for the payment of the $800 on special deposit, plaintiffs rescinded their contract of sale with the said Richardson, and entered into a new contract with him, by the terms of which Richardson agreed to pay plaintiffs rent on the land; that said Richardson, in consideration of the rescission of said contract between himself and plaintiffs, agreed to and did furnish a substitute purchaser for said land, in the person of one Scott Helton, who on or about the date set by said Richardson and the plaintiffs, for the consummation of their sales agreement, for the consideration and on the terms specified in the sales contract aforesaid, sold said land to said Helton.

Defendant bank further alleges that there was no bona fide effort on the part of plaintiffs and defendant Richardson to consummate said sales contract, but that Richardson wanted to move to Illinois and obtain a release from said contract, and that he and the plaintiffs then conspired for the purpose of forcing the defendant bank to pay over to the plaintiffs the $800 placed on deposit, and in pursuance of such conspiracy Richardson agreed with the plaintiffs that he would assist them in shaping the facts and so shaping his own evidence concerning the transaction between them, that they might recover against the defendant bank the said special deposit.

By appropriate special exceptions the plaintiffs in their supplemental petition challenge the sufficiency of the defendant's answer, in that said answer alleges a conspiracy to defraud plaintiffs in the alleged agreement between Richardson and the bank, in the making and delivery of the escrow deposit slip which forms the escrow contract, and of which the plaintiffs had no notice, as shown by the allegations of the answer, and because the answer alleges facts that vary and contradict the terms and conditions of the written escrow deposit contract declared on in plaintiffs' petition; that the said answer nowhere charges notice to the plaintiffs of the agreement between Richardson and the bank with reference to the deposit being withdrawn or as to the limitations placed on said deposit at the time it was made.

These exceptions should have been sustained.

[1] The agreement made and entered into by Richardson and defendant bank, as alleged in the bank's answer, could have no binding effect on the plaintiffs, who are not charged to have had notice of same, and, further, such allegations clearly vary the terms of the escrow contract; there is no plea of non est factum presented by the defendant bank, and, the plaintiffs having alleged that they had performed their part of the contract, they were entitled to recover (Gambrell v. Tatum [Tex. Civ. App.] 228 S. W. 287), and the agreement between Richardson and the

bank set out in the defendant bank's answer, and not charged to have been known to or participated in by the plaintiffs, cannot defeat their right to recovery.

[2, 3] The defendant bank was not a party to the sales contract, and was not entitled to pass upon the question as to whether or not the terms of the sales contract had been complied with. Its interest in the subject-matter of the suit was only as trustee of the escrow fund, consequently, when plaintiffs and defendant Richardson, between themselves, found that the sales contract had been complied with, it was no concern of the defendant bank—its duty was to pay over, as trustee, the sum in its hands, to the plaintiffs. For that reason the trial court's conclusion, that, because there was no contractual relations between the plaintiffs and the defendant bank, the special deposit was not an escrow fund, has no evidence to support it. Nelson v King, 25 Tex. 663; Roberts v. Yarboro, 41 Tex. 449, 454.

It appears from the evidence that the escrow deposit was not applied to the payment of defendant bank's note, given them by Richardson, until after demand was made, and further, that it was never so applied with the consent of the plaintiffs. Smith v. Texas & N. O. R. Co., 101 Tex. 405, 410, 108 S. W. 819.

The trial court's conclusion that the special deposit account was subject to withdrawal by Richardson was evidently based upon his construction of the agreement of the bank and Richardson, and is erroneous, the conclusion not being supported by the evidence.

The defendant bank contends that the evidence in the case, to which no objection was interposed, disclosed affirmatively that the plaintiffs were not only not damaged by the alleged breach of the sales agreement, but that they actually profited by the alleged breach to the extent of $657.50, which profit was realized within the period allowed by the contract for the defendant to perform, and the court could not render a judgment for liquidated damages. In other words, that the plaintiffs, by a resale, have realized a larger sum of money than they had contracted to sell the land to Richardson for, and hence had suffered no damages.

Our Supreme Court has held in Yetter v. Hudson, 57 Tex. 604, 612, that:

"The measure of compensation has been agreed upon by the parties, and the plaintiffs are entitled to no more, and can be restricted to no less, than $7,000 and $1,600, with legal interest on the sum of those two amounts from the 1st day of May, 1891. The parties had the right, if they chose to do so, by mutual agreement, to settle the amount of damages, uncertain in their nature, at any sum on which they might agree. In attempting to make provisions of this nature, it often happens that the law will construe as a penalty an agreement which in its terms stipulates for liquidated damages, but whether the sum stipulated to be paid on breach of an agreement is to be taken as liquidated damages, or as a penalty, will depend upon the intention of the parties, to be ascertained by a just interpretation of the contract."

[4, 5] Taking the view that the defendant bank, not being a party to the sales contract, could not assert such manner of defense, we so hold. But, notwithstanding this holding, if we should consider that the bank was in a position to make such defense, then it appears that the plaintiffs having by a subsequent sale realized a greater sum than stipulated in the sales contract with Richardson, we hold that they are not thereby deprived of their right to recover the $800 as liquidated damages.

In the case of Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1061, Lipscomb entered into a contract with Fuqua, to purchase a large body of land, agreeing to pay therefor approximately $64,000, of this amount $5,000 was paid on the execution of the contract, $5,000 was to be paid on January 10, 1906, and the balance to be paid at a stipulated time and under stipulated conditions The contract between them provided that the $10,000 was to be forfeited in the event Lipscomb failed to pay the deferred payments. The deferred payments not having been made, Fuqua took possession of the land and also forfeited the $10,000. Lipscomb brought suit and in his petition set up the facts entitling him to recover, claiming the $10,000 because same was a penalty, and alleging that the defendant, Fuqua, had sold portions of the land for $80,000 and still has in his possession the remainder of the land which is unsold. A general demurrer was interposed to the petition, which the trial court sustained, and dismissed the petition. The Court of Civil Appeals affirmed the judgment of the trial court. Writ of error was granted by the Supreme Court, and, passing upon the sufficiency of the petition, that court says:

"Looking to the whole contract and the surrounding circumstances as they appeared from the allegations of the petition, we conclude that it was the joint purpose of Fuqua and Lipscomb to convert the lands described in the contract into money, whereby Fuqua would receive as much as $63,744 in payment for the land and Lipscomb would reap the benefit of the surplus of the sum realized over and above that to be paid to Fuqua. In other words, it was an executory contract of sale, to be consummated by the performance on Lipscomb's part by making the sale and paying over the money to Fuqua. This he had not done within the time specified in the contract, nor up to the time that Fuqua declared a rescission of the contract and took possession of the land. Unless there was some circumstance which would render it inequitable for this rescission to occur, by which Lipscomb would suffer damages, Fuqua had the right, upon the failure of Lipscomb to perform his part of the contract to rescind the sale and retake the land, Kennedy v. Embry, 72 Tex. 387 [10 S. W. 88].

"Did Fuqua have the right under the circumstances to rescind the contract and resume his possession of the land? is the next and the important question in the case. We must look alone to the allegations of the petition for the facts upon which to base our conclusion. If there were circumstances which forbade the rescission by Fuqua, then it was necessary for the plaintiff in this action to set up those circumstances, and, unless he has so shown by the allegations of his petition, we must assume that no such existed. Under the allegations of the petition we must conclude that Lipscomb had done no act in an effort to sell the land, because none is alleged. For the same reason it would appear that he had incurred no expense in such effort to sell and therefore there had not grown up any condition from which he could expect to reap a benefit by the continuance of the contract beyond the time fixed for payment. It is not alleged that he had any expectation of being able to sell the land, according to the terms of the contract. In fact, the whole ground is covered by the statement that the payment of the $10,000 part of the purchase price of the land, is the single fact upon which any reliance can be placed for a claim that the rescission was not proper and lawful.

"Whether the vendor who rescinds an executory contract for the sale of land shall return the purchase money paid depends upon the equities of each case. If it would be inequitable for such rescission to occur without restoration of money paid, then it must be restored. No equities are shown by the allegations of the petition, but it does appear that the damages which Fuqua might suffer by a breach of the contract were very uncertain and it is not made to appear that $10,000 was unreasonable as an estimate by the parties of such damages, therefore, courts will assume that the amount agreed upon was intended to compensate Fuqua for the loss he might sustain from a breach of the contract. Bessling v. Hoyle, 1 White & W. Civ. Cas. Ct. App. § 288; Durst v. Swift, 11 Tex. 273; Yetter v. Hudson, 57 Tex. 604."

This case in effect holds that the fact that the seller found another purchaser and sold the land for $17,000 more than he had contracted to sell it to Lipscomb did not show such equity as would entitle him (Lipscomb) to avoid the contract for liquidated damages.

[6] The parties at the time of the signing of the sales contract had the right to then fix the damages, by agreement, as of the time of the signing of same, and having so fixed it as of that date, the defendant will not be permitted to speculate as to whether or not plaintiffs would be damaged in the event of a breach, and will not be permitted to rely on a subsequent sale to destroy such contract.

In the case of Atwood v. Fagan, 63 Tex. Civ. App. 659, 663, 134 S. W. 765, 767, where it was proved upon the trial that subsequent to the purchaser's refusal to consummate the contract of purchase, the seller sold the property to another for $1,000 more than he would have received under the consummation of the breached contract, it was insisted that as the seller did not suffer any loss by reason of the refusal of the purchaser to take the property in the first instance, the Fort Worth Court, speaking by Judge Dunklin, says:

"No other judgment than the one rendered could have been sustained. The rights of the parties relative to the $400 in controversy were fixed when the contract was terminated, and if Atwood was entitled to recover the $400 at that time, we fail to see how that right could be destroyed by his sale thereafter for a greater sum than Fagan agreed to pay."

See, also, Magruder v. Poulton (Tex. Com. App.) 257 S. W. 533; Mathews v. Caldwell (Tex. Com. App.) 258 S. W. 810; Collins-Decker Co. v. Crumpler, 114 Tex. 528, 272 S. W. 773.

[7-9] There is another view of the case which we wish to call attention to. This suit was brought by the plaintiffs against Richardson, as a party to the sales contract, and against the bank, as a stakeholder. In order for the plaintiffs to recover they must have recovered on the allegations of their petition. The trial court having rendered judgment by default against Richardson, as a party to the sales contract, and that judgment not having been appealed from, it was conclusive of the question as to whether the escrow money was a penalty or liquidated damages, and the bank as stakeholder has no right to contest that judgment. Whether the deposit was intended as liquidated damages or was a penalty was a question alone for the court, as a matter of law. Bourland v. Huffhines (Tex. Civ. App.) 269 S. W. 184.

Under our view of the law of this case, the case having been fully developed on the facts, we think the plaintiffs should have secured a judgment in the trial court as prayed for.

The judgment of the trial court is accordingly reversed and judgment here rendered for the plaintiffs for the amount claimed in their petition.