## HIGGINBOTHAM CATTLE CO. v. WHALEY & LEWIS et al.

### No. 1475—5726.

Commission of Appeals of Texas, Section A.
July 22, 1931.

Lockhart, Garrard & Brown, of Lubbock, for plaintiff in error.

Douglas & Scott and Bledsoe, Crenshaw & Dupree, all of Lubbock, for defendants in error.

SHARP, J.

R. W. Higginbotham and J. M. Higginbotham, doing business as the Higginbotham Cattle Company, brought this suit in the district court of Lubbock county against J. C. Whaley and W. T. Lewis, to recover rents alleged to be due upon a written contract for the lease of certain lands situated in New Mexico. At the conclusion of the evidence the trial court instructed the jury to return a verdict in favor of the defendants Whaley & Lewis, against the plaintiff, and in favor of E. G. Rall as against the defendants, which was done. Higginbotham Cattle Company appealed to the Court of Civil Appeals and the judgment of the trial court was affirmed.

For convenience and sake of brevity we refer to the opinion of the Court of Civil Appeals. 26 S.W.(2d) 308.

Upon application of the Higginbotham Cattle Company, the Supreme Court granted a writ of error to review the opinion of the Court of Civil Appeals.

Plaintiffs in error contend:

(a) That the contract sued upon was ambiguous, vague, indefinite, and uncertain, and that the Court of Civil Appeals erred in holding that the contract herein sued upon as to the leasehold interest and privileges described therein was not ambiguous and uncertain to the extent that parol testimony should have been admitted to explain the uncertainty, and that the trial court did not err in excluding such testimony.

(b) That the Court of Civil Appeals erred in holding that the trial court did not err in excluding the testimony offered by the plaintiffs in error to show that the leasehold interest and privileges were that the plaintiffs in error were conveying to the defendants in error by the contract herein sued upon, when such evidence would have shown that the plaintiffs in error were merely leasing to the defendants in error 1,400 acres which it had acquired by leasehold rights from R. O. Rogers and Sam Rogers, and certain leasehold rights and privileges to other lands so that the total covered by said lease was forty sections, and that the leasehold interest and rights referred to in the contract were merely intended to cover any privilege that the plaintiffs in error had to graze the unappropriated lands over and above the 1,400 acres, to use the same until appropriated, used, and fenced out by the rightful owners thereof, and that defendants in error knew that plaintiffs in error had no right to any land other than the 1,400 acres owned by R. O. and Sam Rogers other than that they had been using all the lands in the inclosure containing about forty sections, and that the defendants in error made the contract knowing that plaintiffs in error had no right to the other lands except they were grazing it unmolested by the owners, and the defendants in error knew that they were likely to lose said other lands at any time the rightful owner should claim and appropriate same, and made and entered into such contract with such knowledge.

The contract sued upon is as follows:

"Whereas the undersigned Higginbotham Cattle Company is lessee under R. O. Rogers and Sam Rogers and wife, Dovie Rogers of those certain lands hereinafter described with right to assign same and sublet the said premises:

"Therefore, the said Higginbotham Cattle Company, here called lessor, does by this instrument lease and let unto Whaley & Lewis, a firm composed of J. C. Whaley and W. T. Lewis, for a period of five years from this date, that certain premises situated in Roosevelt County, New Mexico, being known as the Six Shooter and Anderson pastures, located about forty miles south of Portales, consisting of about 1400 acres of lands owned

by said R. O. and Sam Rogers, and certain leasehold interests and privileges, so that the total lands in said pastures and covered hereby amount at this time to about 40 sections of land, and being the same lands leased to said lessors herein by said R. O. and Sam Rogers and Dovie Rogers on the 26th day of October 1925, and this lease covers and includes all improvements on said lands.

"The agreed rental is $1250.00 per year the same payable annually in advance; and if default be made in the payment of any rental when due, the lessors may terminate this lease contract and all rights of the lessees hereunder, without prejudice to their right to collect rents for the entire term, and may take immediate possession of the premises.

"The said Whaley & Lewis agree to become the tenants of said Higginbotham Cattle Company for the term above set out, as the said premises, and will pay the annual rentals to lessors at Lubbock, Texas.

"The lessees to use said lands for stock-raising and farming purposes.

"Privilege is here given the lessees to assign this lease, or sublet the premises or any part thereof.

"Witness the signatures of the parties hereto this the 31st day of October 1925, the said Higginbotham Cattle Co., acting by T. J. White, and the said Whaley & Lewis, acting by W. T. Lewis.

"Higginbotham Cattle Company

"By T. J. White,

"Whaley & Lewis,

"By W. T. Lewis."

The pleadings are voluminous, but we will copy enough therefrom to show the issues raised.

Plaintiffs in error in their supplemental answer and in their trial amendment, among other things, alleged as follows:

"Plaintiff denies all the allegations contained in paragraph three of the answer of the defendants, Whaley and Lewis; and admits only that part of paragraph four of the defendants' First Amended Original Answer, as follows: 'That of the forty sections of land purported to be leased by the contract sued upon by plaintiffs herein, the recited owners thereof (R. O. and Sam Rogers, and wife, Dovie Rogers) only owned about 1400 acres of land, and that they had no sort of ownership, leasehold title, or any other right or interest in the remainder "Squatter Sovereignty" as hereinafter alleged, but that the other lands were simply unoccupied, vacant, unfenced and unimproved wild range which the said Rogers families had for years prior thereto used for grazing purposes, but simply because the true owner thereof did not evict them. That said grazing right on said additional sections was at the time valuable because it afforded good cheap range, and the only available water for use by cattle grazing upon such forty sections could be gotten only from wells upon the 1400 acres actually owned by said R. O. and Sam Rogers' and in this connection the plaintiff would represent and show to the Court that the defendants Whaley and Lewis, knew all the time that such country was merely open range controlled only by the water on the 1400 acres actually owned by R. O. and Sam Rogers, and that said Whaley and Lewis knew all the time the exact condition of the Six Shooter and Anderson pasture, and the lands therein, and knew that they might at any time have to give up said lands other than the 1400 acres belonging to the Rogers; that as long as they could use said pastures and lands it was cheap pasturage, and, with full knowledge of all the facts and with their eyes open, they made the contract of lease herein sued upon, thereby hoping that they might keep said free range for the full term of five years."

"Plaintiff says that the leasehold interest and privileges in and to the 40 sections of land described in the contract herein sued upon, and also described in the contract of the plaintiff with R. O. and Sam Rogers, on the 26th day of October, 1925, and which were leased to defendants, Whaley and Lewis, is vague, indefinite and uncertain, is contradictory, and said contract does not state what kind or character of lands are leased, and the amount leased, or what kind or character of privilege plaintiff and R. O. Rogers and Sam Rogers had to such lands or the amount and description of such lands that such privileges covered and such contract being so vague, indefinite, contradictory, uncertain and of such doubtful meaning, and is not of such nature as to ascertain the intention of the parties and the plaintiff asks the court to receive parol testimony explaining such defect and the real intention of the parties, and in this connection plaintiff would represent to the Court that of the lands so leased, it only had the lease on the 1400 acres belonging to R. O. and Sam Rogers on which the water was located, and that the balance of 40 sections of land or thereabouts was simply open range, vacant and unleased and as plaintiff believes was part State lands that could not be leased; that all such lands were under an enclosure made by fences of this plaintiff and fences of other parties, part of such lands under such enclosure being as far as ten miles from water and the privileges that the said R. O. and Sam Rogers had and gave to this plaintiff was simply to use and graze said lands and that it was such privileges as were enjoyed by the cowmen generally of that section whose rights in that respect none of the cowmen interfered with and all that said R. O. Rogers and Sam Rogers had or all that plaintiff had was the right and

privileges under such state of facts, all of which defendants Whaley and Lewis knew and recognized and bought said lease with full knowledge and acquiescence thereto. They knew that such lands might later be appropriated by the true owners at some time later and took such lease well knowing such facts."

"That the leasehold interest and privileges referred to in paragraph two of the contract herein sued upon, and the lands leased from R. O. and Sam Rogers of date October 26th, 1925, was only 1400 acres belonging to the Rogers, and the balance of the lands and rights and privileges leased was the right to use the land under fence in the enclosure with the 1400 acres in the Six Shooter and Anderson pastures, was simply the right and privilege of using said forty sections in such enclosures as free range until the rightful owners should claim same and such rights and privileges to use said pastures unmolested by other and being the owners of the water in said pastures, it was understood and agreed and the general acceptance of the cowmen that one would not be molested in his enjoyment of such privileges by other cowmen, and the defendant, Whaley and Lewis, knew and understood fully that the plaintiff only owned 1400 acres of land upon which part of water was located and that the leasehold rights and privileges was simply the right and privilege general and common among cowmen to use dry lands free and not be interfered with by other cowmen and none but rightful owners."

Plaintiffs in error in connection with the contract dated October 31, 1925, executed by Higginbotham Cattle Company and Whaley & Lewis, offered in evidence the following contract between R. O. Rogers et al. and Higginbotham Cattle Company, which reads as follows:

"R. A. Rogers and Sam Rogers and wife Dovie Rogers, for a valuable consideration to them paid by the Higginbotham Cattle Company, do hereby lease and let unto the said Higginbotham Cattle Company their ranch situated in Roosevelt County, New Mexico, about 40 miles South of Portales, and known as the 'Six Shooter and Anderson Pastures,' consisting of about 1,400 acres owned by the lessors and including such leasehold rights and privileges as they may have in and to the remainder of the land situated in said pastures, there being now about forty (40) sections of land in said pastures.

"The said Higginbotham Cattle Company agrees to use said premises for grazing and farming purposes during the term; and said company shall have and it is hereby given the privilege of subletting or subrenting said premises or any part thereof during the term hereof without the consent of the lessors.

Said lease being for five years from date of contract.

"Witness our hands, this October 26, 1925.
"R. O. Rogers
"Sam Rogers
"Dovie Rogers, Lessors.
"Higginbotham Cattle Co.,
      "By J. M. Higginbotham."

Plaintiffs in error tendered also as a witness T. J. White and offered to prove by him and he would have testified, if permitted by the court, substantially as follows: That he made all negotiations leading up to the execution of the contract herein sued upon, and executed the contract for Higginbotham Cattle Company; that the leasehold interest and privileges described in the contract were simply the privilege of using the open, unappropriated lands under the inclosure with the 1,400 acres belonging to the Higginbotham Cattle Company and acquired from R. O. and Sam Rogers and other than the 1,400 acres belonging to them; that the witness would have testified that it was the custom of the cow men in that section to respect one another's rights with reference to not interfering with range held or claimed by another; that the water rights on the lands owned or under lease by the Higginbotham Cattle Company were valuable water rights; that such rights with the 1,400 acres were all that was being leased and was all the land that was owned by the Higginbotham Cattle Company; that the defendants understood at the time they entered into the contract herein sued upon that the plaintiffs only had the control of the 1,400 acres set out therein and the water rights and did not own any other rights in and to the forty sections under the enclosure other than the right to use said land and graze it without molestation by any of the neighbors until such time as the real or rightful owner might claim or fence out such lands. The defendants in error objected to the introduction of the contract and the testimony of the witness White, and the court sustained the objections thereto and excluded same.

■ The rule is well established in this state that when there is no ambiguity in the terms of a written contract, parol evidence is inadmissible.

■ It is also equally well established that parol testimony is not admissible to vary a written contract; but that such evidence is admissible to explain an ambiguity or an uncertainty or to explain a writing when the explanation is necessary, and the evidence is consistent with the writing, and to ascertain the intention of the parties, when doubtful, or to explain the language or terms used.

■■ The pleadings and the proof tendered by plaintiffs in error raised the issue of fact

as to what was intended by the parties to the contract when the Higginbotham Cattle Company leased to Whaley & Lewis certain premises situated in New Mexico and *"certain leasehold interests and privileges, so that the total lands in said pastures and covered hereby amount at this time to about 40 sections of land, and being the same lands leased to said lessors herein by said R. O. and Sam Rogers and Dovie Rogers on the 26th day of October 1925."* (Italics ours.)

The language of this contract respecting the property leased is practically the same as that contained in the contract dated October 26, 1925, from R. O. Rogers et al. to Higginbotham Cattle Company. There is no uncertainty as to the 1,400 acres owned or controlled by the Rogers and acquired by lease from them by the Higginbotham Cattle Company, but as to the further clause just quoted above, without some explanation, it would be utterly impossible to ascertain what was intended by the parties to that contract, or what "certain leasehold interests and privileges" embraced. When explained it raises an issue to be determined as to what the parties intended. If Whaley & Lewis agreed to lease from the Higginbotham Cattle Company 1,400 acres of land, about which there was no question as to the ownership and possession thereof, and other lands which were open and unappropriated and the possession and title thereto questionable and the consideration was based upon those conditions, and the lease executed in the light of those circumstances, plaintiffs in error were entitled to prove that fact. The contract executed by the Higginbotham Cattle Company to Whaley & Lewis dated the 31st day of October, 1925, refers to the contract dated October 26, 1925, from R. O. Rogers et al. to the Higginbotham Cattle Company, and refers to same in such a manner as to make them closely connected, and should be considered in connection one with the other. Not only was it permissible to introduce parol testimony as to what was intended by the parties in the contract dated October 31, 1925, the terms used therein being ambiguous, but the contract dated October 26, 1925, was also admissible, in order to show the true intention of the parties at the time the lease was executed.

▮ Under the state of this record, which involves a lease covering 1,400 acres of land and the use of other terms above quoted, which terms are ambiguous, evidence as to what "certain leasehold interests and privileges" were to embrace, as understood by the parties executing the lease contract, was admissible for the purpose of showing the understanding of each party as to the meaning of the written contract, in accordance with the settled rule that to explain the meaning of the parties to an ambiguous con-

tract, the situation of the parties, what they intended by the lease, and the surrounding circumstances may all be looked to. If Whaley & Lewis knew the circumstances surrounding the land leased, the uncertainty of the uses thereof, and the consideration to be paid therefor was measured in the light of the facts, the rule announced by Judge Williams in the case of Welder v. McComb, 10 Tex. Civ. App. 85, 30 S.W. 822, would not apply. When we consider the facts involved in this case as compared with the facts involved in the case of Welder v. McComb, supra, there is a solid distinction in the two cases.

Let us review briefly some of the authorities upon this question:

In the case of Smith v. Texas & N. O. Ry. Co., 101 Tex. 405, 108 S. W. 819, 820, Chief Justice Gaines, rendering the opinion for the court, held in effect that in a suit involving the question whether oil tank cars were included in the description of a mortgage conveying "all other property owned" by the mortgagor, evidence of the mortgagor that he explained to the mortgagee, and it was understood that the mortgagor did not own the cars, was admissible, since the rule that parol evidence is not admissible to vary the terms of a written contract does not apply to cases of explanation of ambiguity. He says: "But it was contended on behalf of the receiver that the parties to the contract did not regard the tank cars as property 'owned' by the Equitable Land & Oil Company, and, in support of that contention, the plaintiff in error 'offered in evidence the depositions of M. T. Brown to show that he, as general manager of the Equitable Land & Oil Co., negotiated and executed the mortgage or deed of trust referred to with W. H. Wilson, the general manager representing the National Supply Co., and at the time he fully explained to said Wilson the situation with reference to said cars, and that they had been sold to the Richmond Transportation Co., and that the said Wilson fully understood that they were not embraced in said mortgage; and, further, that by mistake the first draft of said mortgage or deed of trust did embrace said cars, and, on attention being called to it, the same was redrafted and reformed, and said cars left out of it.' The evidence, upon objection, was excluded by the court, and in this we think there was error. Now, at the time of the execution of the deed of trust in question, it was a question of some nicety whether the cars in view of the contract that had been entered into for their conveyance could be said to be owned by the mortgagor in the deed of trust. It is an elementary rule that parol evidence is not admissible to vary the terms of a written contract. But when we come to apply the description of property in a con-

veyance, an ambiguity or a doubt is disclosed as to whether the property is embraced within the description, a different rule obtains, and it is permissible to prove by oral testimony what property the parties meant to embrace."

In the case of Magnolia Warehouse & Storage Co. v. Davis & Blackwell, 108 Tex. 422, 195 S. W. 184, 185, Judge Yantis, in rendering the opinion for the Supreme Court in that case, held, in effect, that where a written instrument is ambiguous or incomplete on its face, parol evidence is admissible to show that the real contract was to the extent necessary to remove the ambiguity and make the contract complete. In this opinion the following language is used: "The general rule is that parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written contract. But one of the exceptions to the general rule is that if the written instrument itself shows to be either ambiguous or incomplete, parol testimony is admissible to show what the real contract was to the extent necessary to remove the ambiguity, and to make the contract complete in its terms which show to be incomplete. The exception to the general rule is as well settled as is the rule itself. Jones, Commentaries on Evidence, § 434."

See, also, the following cases: Kirk v. Brazos County, 73 Tex. 56, 11 S. W. 143; San Jacinto Oil Co. v. Ft. Worth Light & Power Co., 41 Tex. Civ. App. 293, 93 S. W. 173; Langford v. Power (Tex. Civ. App.) 196 S. W. 662; Hart v. Light & Jones (Tex. Com. App.) 245 S. W. 671; American Refining Co. v. Sims Oil Co. (Tex. Civ. App.) 282 S. W. 894; Quanah, A. & P. Ry. Co. v. Cooper (Tex. Civ. App.) 236 S. W. 811; Thorington v. Smith, 8 Wall. 1, 19 L. Ed. 361; Confederate Note Case, 19 Wall. 548, 22 L. Ed. 196; Porter v. McKinnon (Tex. Com. App.) 221 S. W. 574.

Many other cases could be cited.

From the foregoing it follows that in our opinion the pleadings and proof tendered raise an issue of fact to be determined as to what the parties intended by the language or terms used in the contract dated October 31, 1925, what property was to be included in the lease, and the conditions and circumstances under which it was included, that the evidence offered to that effect was admissible, and that the trial court and Court of Civil Appeals were in error in holding to the contrary.

Therefore, we recommend that the judgments of the trial court and of the Court of Civil Appeals be reversed and this cause remanded to the district court for another trial in accordance with this opinion.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.